Argued and submitted April 2, remanded June 3, 1986

In the Matter of the Marriage of

SWAN,
*Petitioner on Review,*
*and*

SWAN,
*Respondent on Review.*

(TC D8205-69002; CA A29760; SC S32328)

720 P2d 747

Leslie M. Roberts, Portland, argued the cause for petitioner on review. With her on the petition was Sullivan, Josselson, Roberts, Johnson & Kloos, Portland.

Clint A. Lonergan, Portland, argued the cause and filed a response for respondent on review.

Before Peterson, Chief Justice, and Linde, Campbell, Carson and Jones, JJ., Justices

PETERSON, C. J.

## PETERSON, C. J.

Petitioner on review (husband) and respondent on review (wife) were married in 1946. In 1983 the marriage was dissolved. The dissolution decree awarded each spouse approximately one-half of the parties' property.

The trial court used the value of both parties' Social Security Act (42 USC §§ 401 *et seq*) benefits in calculating the total value of the property to be divided and in determining how much of the property to award to each spouse. The court did not award spousal support.

The wife appealed, asserting that the trial court erred in not awarding spousal support. The husband cross-appealed, claiming that the trial court erred in considering the value of the social security benefits in its property division.

The Court of Appeals modified by awarding spousal support to the wife, but it rejected the husband's claim that the property division was in error because the Social Security Act prohibits consideration of social security benefits in property division calculations. Husband petitioned for review, assigning as error, *inter alia,* the consideration of the value of social security benefits in the division of the property.

ORS 107.105(1)(f)[1] provides for property division

---

[1] ORS 107.105(1)(f) provides:

"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. *The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held.* Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered as species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. * * * If a spouse has been awarded spousal support in lieu of a share of property, the court shall so state on the record, and if the obligor dies prior to the termination of such support the court may modify the method of

upon dissolution. It provides that "[a] retirement plan or pension * * * shall be considered as property."

■ The trial court found the value of the marital property to be $487,656.92. This included $50,000 attributable to the husband's social security benefits and $29,000 attributable to the wife's. The husband was awarded property, including his social security benefits, valued at $249,467.02. The wife was awarded property, including her social security benefits, valued at $238,289.90. In affirming the property division, the Court of Appeals stated:

"The trial court awarded husband these assets:

| "Hawaii Lease | $ 5,000.00 |
|---|---|
| Swan-Holtzheimer Building | 32,500.00 |
| Life insurance policies | 3,600.00 |
| Federal Civil Service Retirement | 117,500.00 |
| Federal Disability Pension | 32,967.02 |
| Public Employee Retirement | 4,900.00 |
| Social Security (husband's) | 50,000.00 |
| Household goods | 3,000.00 |
| | $249,467.02 |

"Wife was awarded:

| "Family home (equity) | $ 68,000.00 |
|---|---|
| Bede contract | 10,973.00 |
| Midwest Income Trust | 1,936.90 |
| Franklin Money Market | 1,470.00 |
| CCST stock | 15,000.00 |
| Dynatech stock | 50,500.00 |
| American Home stock | 15,000.00 |
| Jones Cable stock | 5,000.00 |
| Ford stock | 15,000.00 |
| IRA | 2,300.00 |
| Tri-County Retirement | 2,410.00 |
| Tax sheltered annuity | 4,700.00 |
| Social Security (wife's) | 29,000.00 |
| Household furnishings | 17,000.00 |
| | $238,289.90 |

"* * * * *

"We turn now to husband's cross-appeal. He argues that federal law prohibits courts from considering Social Security benefits in property division awards. He relies on 42 USC § 407. That provision makes the right of any person to future Social Security payments nontransferrable and nonassignable

and makes Social Security benefits not subject to 'execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.' 42 USC § 407(a). It precludes a court from awarding one spouse's Social Security benefits to the other; however, it does not preclude a court in a dissolution proceeding from considering Social Security benefits when dividing the parties' real or personal property 'as may be just and proper in all the circumstances.' ORS 107.105(1)(f) directs that a 'retirement plan or pension or an interest therein shall be considered as property.' Although Social Security benefits can only be awarded to the person to whom they accrue, *the value of those benefits can be considered in the equitable distribution by the court." Swan and Swan,* 74 Or App 616, 618-20, 704 P2d 136, 137-38; *clarified* 75 Or App 764, 709 P2d 245 (1985) (*Per Curiam*) (footnote omitted; citation omitted; emphasis added).

Although the Court of Appeals did not transfer or assign the respective social security benefits of the parties, it did use the respective values of the benefits in dividing the property. For the reasons that follow, we hold that it was error to consider the value of any social security benefits in making a property division under ORS 107.105(1)(f).

The federal Social Security Act contains a clause - sometimes referred to as an antiassignment clause - 42 USC § 407, that provides:

### "(a)   Inalienability of right to future payments

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

### "(b)   Inamendability of section by inference

"No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section."   .

42 USC § 659(a) excepts from § 407(a) "legal process" to collect "child support" and "alimony." It provides:

"Notwithstanding any other provision of law (including section 407 of this title) effective January 1, 1975, moneys

(the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations *to provide child support or make alimony payments.*" (Emphasis added.)

The exception contained within 42 USC § 659(a) is not, however, limited to 42 USC § 407(a). The exception applies to all "moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States." This is significant, as will be seen below.

In turn, 42 USC § 662(c) limits the meaning of "alimony" and provides:

"The term 'alimony', when used in reference to the legal obligations of an individual to provide the same, means periodic payments of funds for the support and maintenance of the spouse (or former spouse) of such individual, and (subject to and in accordance with State law) includes but is not limited to, separate maintenance, alimony pendente lite, maintenance, and spousal support; such term also includes attorney's fees, interest, and court costs when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance with applicable State law by a court of competent jurisdiction. *Such term does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.*" (Emphasis added.)

The provisions of 42 USC §§ 659 and 662(c) that allow social security benefits to be reached by proceedings to enforce the beneficiary's legal obligations to "provide child support or make alimony payments" are exceptions to the general rule of immunity from legal process provided social security benefits by 42 USC § 407. But 42 USC § 662(c) specifically excludes from the definition of alimony the "transfer of property *or its value* by an individual to his spouse or former spouse in compliance with any * * * division of

property between spouses or former spouses." (Emphasis added.)

■      Including the value of the social security benefits of the spouses in a division of marital property under ORS 107.105(1)(f) is contrary to the Social Security Act. State law, even state domestic relations law, must yield if Congress positively has required by direct enactment that state law be preempted. *Hisquierdo v. Hisquierdo,* 439 US 572, 581, 99 S Ct 802, 808, 59 L Ed 2d 1, 11 (1979).

*Hisquierdo v. Hisquierdo, supra,* involved a divorce suit between a husband, the petitioner, and his wife, the respondent. The husband had worked on the railroad for many years. Although the issue before the court involved the Federal Railroad Retirement Act of 1974 (45 USC §§ 231 *et seq*), the issue there is identical to the issue here.

The Railroad Retirement Act contained an anti-assignment clause that, for the purposes of this case, is indistinguishable from the antiassignment clause in the Social Security Act, 42 USC § 407(a). 45 USC § 231m provided:

> "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated * * *."

In 1975, Congress passed what is now 42 USC § 659(a) to permit federal benefits to be reached to satisfy a legal obligation for child support or alimony. Pub L 93-647, Part B, § 101(a); 88 Stat 2357. In 1977 Congress enacted 42 USC § 662(c), which restricted the meaning of "alimony." It specifically stated that alimony "does not include * * * equitable distribution of property, or other division of property between spouses or former spouses."[2] Pub L 95-30, Tit V, § 501(d); 91 Stat 160.

Mrs. Hisquierdo requested that she be awarded half the value of railroad retirement benefits attributable to her husband's labor during the 14 years of their marriage, 19.6

---

[2] In *Hisquierdo v. Hisquierdo,* 439 US 572, 576 99 S Ct 802, 805, 59 L Ed 2d 1, 7 (1979), the court characterized the amendments as "an exception to [45 USC] § 231m *and similar provisions in all other federal benefit plans.*" (Emphasis added.)

percent of the total benefits. She listed the retirement expectation as an item of community property subject to division upon dissolution of the marriage.

The Supreme Court of California held that because the retirement benefits derived in part from the husband's employment during marriage, they were community property. *In re Hisquierdo,* 19 Cal 3d 613, 139 Cal Rptr 590, 566 P2d 224 (1977). The court did not cite or discuss the then very recent 1977 amendment to the Social Security Act discussed above, 42 USC § 662(c).

The Supreme Court of the United States granted certiorari. 435 US 994, 98 S Ct 1644, 56 L Ed 2d 82 (1978). On the question of preemption, the court stated these general rules:

"We granted certiorari to consider whether, under the standard of this Court's decided Supremacy Clause cases, the award to respondent impermissibly conflicts with the Railroad Retirement Act * * *.

"Insofar as marriage is within temporal control, the States lay on the guiding hand. 'The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' *In re Burrus,* 136 US 586, 593-594 [, 10 S Ct 850, 34 L Ed 500] (1890). Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question. See, *e.g., Ohio ex rel Popovici v. Agler,* 280 US 379 [, 50 S Ct 154, 74 L Ed 489] (1930). On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted. *Wetmore v. Markoe,* 196 US 68, 77 [, 25 S Ct 172, 49 L Ed 390] (1904). A mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." 439 US at 581, 99 S Ct at 808, 59 L Ed 2d at 10-11.

On the preemptive effect of 45 USC § 231m, the Court held:

"Section 231m plays a most important role in the statutory scheme. Like anti-attachment provisions generally, *see Philpott v. Essex County Welfare Board,* 409 US 413 [, 93 S Ct

590, 34 L Ed 2d 608] (1973); *Wissner v. Wissner,* [388 US 665, 70 S Ct 398, 94 L Ed 424 (1950)] it ensures that the benefits actually reach the beneficiary. It pre-empts all state law that stands in its way. It protects the benefits from legal process '[n]otwithstanding any other law * * * of any State.' Even state tax collection laws must bow to its command, for Congress added that phrase in an amendment designed in part to ensure that neither federal nor state tax collectors would encroach on the distribution of benefits. It prevents the vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy." 439 US at 583-84, 99 S Ct at 809-10, 59 L Ed 2d at 12.

The specific question in *Hisquierdo* was this: Do the antiassignment provisions of 45 USC § 231m, as limited by 42 USC §§ 659(a) and 662(c), bar state courts from considering Railroad Retirement Act benefits in making divisions of property in dissolution cases? The Supreme Court held that Congress, in enacting 45 USC § 231m and 42 USC §§ 659 and 662(c), intended to forbid states to treat such railroad retirement benefits as community property, and that federal retirement benefits could not be considered for property division purposes.

"We are mindful that retirement benefits are increasingly important in American life and that divorce is becoming more frequent. The burden of marital dissolution may be particularly onerous for a spouse who, unlike respondent, has no expectation of receiving his or her own social security benefits. The 1975 and 1977 amendments, however, both permit and encourage garnishment of Railroad Retirement Act benefits for the purposes of spousal support, and those benefits will be claimed by those who are in need. Congress may find that the distinction it has drawn is undesirable. Indeed, Congress recently has passed special legislation to allow garnishment of Civil Service Retirement benefits for community property purposes. See Pub L 95-366, 92 Stat 600.

"For the present, however, the community property interest that respondent seeks conflicts with § 231m [the counterpart of 42 USC § 407], promises to diminish that portion of the benefit Congress has said should go to the retired worker alone, and threatens to penalize one whom Congress has sought to protect. It thus causes the kind of injury to federal interests that the Supremacy Clause forbids. It is not the province of state courts to strike a balance different from the

one Congress has struck." 439 US at 590, 99 S Ct at 812-13, 59 L Ed 2d at 16. (Footnote omitted.)

Because the antiassignment provisions of 45 USC § 231m are legally indistinguishable from the antiassignment provisions of 42 USC § 407(a), we have no hesitancy in concluding that the *Hisquierdo* rule applies here. Family courts, in making divisions of property, cannot consider social security benefits.

3. That Congress intended to preempt state law property division schemes as applied to the social security benefits of a spouse upon divorce also is shown by the fact that 42 USC § 402(b)(1) expressly provides old-age benefits for divorced spouses so that a divorced spouse need not depend upon a particular state's system of marital property law. *See Richard v. Richard,* 659 SW2d 746 (Tex App 1983). The benefit payable to a divorced spouse of a covered worker does not reduce the benefit payable to the worker. 42 USC § 403(a)(3). These provisions, together with the antiassignment provision of 42 USC § 407, demonstrate a congressional intent to preserve the federal character of the social security system from state incursion. *See, e.g., Umber v. Umber,* 591 P2d 299 (Okla 1979); *Richard v. Richard, supra; see also* Martin, *Social Security Benefits for Spouses,* 63 Cornell L Rev 789, 834-40 (1978)

Although Oregon is not a community property state, ORS 107.105(1)(f) provides for a division of property as described in 42 USC § 662(c). The third and fourth sentences of ORS 107.105(1)(f) provide:

"The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

The effect of including the value of either spouse's social security benefits in the property to be divided is to allow the trial court to divide that value between the spouses. This conflicts with 42 USC §§ 407, 659 and 662(c). We hold that the value of social security benefits of either spouse may not be considered in the division of property. *See In re Marriage of Hillerman,* 109 Cal App 3d 334, 167 Cal Rptr 240 (1980);

*Marriage of Evans,* 85 Ill App 3d 260, 406 NE2d 916 (1980), *reversed on other grounds,* 85 Ill 2d 523, 426 NE2d 854 (1981); *Umber v. Umber, supra; Richard v. Richard, supra; cf. Hisquierdo v. Hisquierdo, supra* (Railroad Retirement Act); *Lavargo v. Lavargo,* 93 Wash 2d 460, 610 P2d 907 (1980).[3]

If the social security benefits are excluded, the value of the property awarded to the husband is reduced from $249,467.02 to $199,467.02. The wife's share is reduced from $238,289.90 to $209,289.90. Where the husband originally was awarded property valued approximately $11,000 more than that awarded to the wife, the wife now has an advantage of nearly $10,000.

The Court of Appeals' earlier decision was to award the "long half" to the husband, considering the social security benefits of the parties. We allowed review to consider a question of law. We choose not to exercise our power of *de novo* review, ORS 19.125(4), and remand this case to the Court of Appeals for further consideration in light of this opinion.

Remanded to the Court of Appeals.

---

[3] *But cf. Zagajewski v. Zagajewski,* 161 Ind App 98, 103-04, 314 NE2d 843, 846 (1974) (social security benefits are to be considered in devising a property settlement and an award of alimony which is equitable, no discussion of Supremacy Clause issue); *Locke v. Locke,* 246 NW2d 246, 254 (Iowa 1976) (same); *Harmon v. Harmon,* 161 NJ Super 206, 211-12, 391 A2d 552, 555 (1978) (same); *Daniels v. Daniels,* 490 SW2d 862, 863 (Tex Ct App 1973) (same); *Cleaver v. Cleaver,* 10 Wash App 14, 17, 516 P2d 508, 511 (1974) (same). Significantly, none of these contrary cases addressed preemption, all were decided before *Hisquierdo v. Hisquierdo, supra,* and none considered the 1977 amendment discussed in the text.