1996 SD 119

**Joseph E. GERAETS, Plaintiff and Appellee,**

v.

**Ethel M. GERAETS, Defendant and Appellant.**

**No. 19234.**

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided Sept. 25, 1996.

Catherine V. Piersol and Jamie L. Haworth of Piersol and Delaney, Sioux Falls, for plaintiff and appellee.

Karen L. Crew and Michael B. Crew of Crew & Crew, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Ethel Geraets appeals the property division in a judgment and decree of divorce from Joseph Geraets. We affirm.

## FACTS

[¶ 2] The parties were married in 1969 and five children were born during the marriage. Ethel is forty-six years of age and Joseph is forty-seven. Ethel was employed as a teacher before the children were born and Joseph worked at a meat packing plant in Sioux Falls, South Dakota. In 1987, Joseph left that employment and he and Ethel engaged in a farming operation. In 1989, Ethel obtained part time employment with the United States Post Office and eventually worked her way into a full time mail carrier's position.

[¶ 3] In May 1992, Joseph served Ethel with a summons and complaint for divorce. The parties eventually entered into a stipulation and agreement that was incorporated in a judgment and decree of divorce entered in January 1993. Trial of the property division

commenced on February 24, 1995 [1] and continued in March. In April, the trial court entered findings of fact, conclusions of law and an amended judgment and decree of divorce incorporating the property division.

[¶ 4] The trial court in its findings valued the net marital property at $179,517 comprised of $323,417 in assets less $143,900 in liabilities. The trial court awarded Joseph property with a net value of $86,551. Ethel received property with a net value of $90,965. Ethel appeals.

## ISSUE 1

[¶ 5] **Was the trial court clearly erroneous in its valuation of the marital estate?**

[¶ 6] Ethel contends the trial court was clearly erroneous in its valuation of the marital estate because its valuation included property and debts accumulated after entry of the divorce decree and because it valued the marital estate as of the time of the trial of the property division rather than as of the time of the entry of the divorce decree. Specifically, Ethel contests the following valuations: inclusion of savings bonds she acquired after the divorce; valuation of the parties' retirement plans at their 1995 value rather than their value at the time of entry of the divorce decree; inclusion of the hospital debt Joseph incurred in 1994; inclusion of the debt for the 1994–95 school tuition; inclusion of the 1994 debt to Custan Harvesting; inclusion of the anticipated loan of $30,000 for 1995 farm expenses; and, exclusion of livestock and grain owned at the time of the divorce.

■ [¶ 7] Our standard of review is clear: On review of a property division, this court will not attempt to place valuations on the assets because that is a task for the trial court as the trier of fact. The only time this court interferes with the valuations determined by the trial court is when it has made a clearly erroneous valuation finding.

*Schumaker v. Schumaker,* 439 N.W.2d 815, 816 (S.D.1989) (citations omitted).

■ [¶ 8] With regard to the timing of a property valuation, the general rule is that the date of the granting of the divorce is the proper time for determining the value of the marital estate. As was well explained by the Wisconsin Supreme Court in *Johnson v. Johnson,* 37 Wis.2d 302, 155 N.W.2d 111, 114–15 (1967):

[T]he division of the estate is an adjustment of property rights and equities between the parties. In addition, [the property division statute] requires taking into consideration the ability of the husband, the special estate of the wife, the character and situation of the parties and all of the circumstances of the case. The court's appreciation of these factors is undoubtedly the greatest at the time the divorce is granted, for it is then when the trial judge's recollection of the entire matter is the best. *Also, ... [this] court has held that absent special circumstances the date of the granting of the divorce is the proper time for the determination of the value of the estate for the purposes of a property division.* Further, since the propriety of an alimony award is often viewed in relation to how much of the divisible estate the wife received, it is helpful to the Supreme Court when asked to review the trial court's decision to have the entire matter disposed of. Division of the property as early as possible would have the further advantage of the elimination of strife and friction which might result if successive applications to the court are needed to divide the trust property as it comes into the hands of the defendant.... [T]he Supreme Court [has] stated that the elimination of the source of strife and friction is to be sought and the affairs of the divorced parties separated as far as possible. *We think that the better policy is to require division of the property, if there is to be such division, at the time of the granting of the divorce unless exceptional circumstances intervene.* (emphasis added) (citations omitted).

---

1. The reasons for this two year delay in the trial of the property division go largely unexplained in the settled record.

[¶ 9] South Dakota law echoes these views. In *Miller v. Miller*, 83 S.D. 227, 232, 157 N.W.2d 537, 540 (1968), we observed that, "[t]he estate ... taken into consideration in fixing alimony or dividing the property is *usually* the estate ... owned at the time of the decree." (emphasis added). However, even in *Miller* we did not adhere to this view as a hard and fast rule. *Miller* also involved a divorcing farm couple. Trial of the action commenced approximately a year before the divorce decree was entered. On appeal, issues were raised over the timing of the valuation of certain agricultural debts. Because of the year-long delay between the commencement of trial and the entry of the divorce decree, we held that the day the trial court asked for evidence of the amount of the debts (i.e., the second day of trial) was the proper date for their valuation as opposed to the date the divorce decree was entered. *See Miller*, 83 S.D. at 232, 157 N.W.2d at 540.

[¶ 10] While the present case does not involve a situation identical to that in *Miller* (i.e., an extended period of delay between the time of commencement of trial and the time of entry of the divorce decree), it certainly involves one that is substantially similar (i.e., an extended period of delay between the time of entry of the divorce decree and the time of commencement of trial). Accordingly, we adhere to our precedent in *Miller* and hold that there was no error by the trial court in valuing the marital estate according to the time of its receipt of valuation evidence as opposed to the time of its entry of the divorce decree. It follows that there was no clear error in: the inclusion of the savings bonds Ethel acquired after entry of the divorce decree; the valuation of the retirement plans at their 1995 value; the inclusion of Joseph's 1994 hospital debt; the inclusion of the debt for the children's 1994–95 school tuition; the inclusion of the 1994 debt to Custan Harvesting; and, the exclusion of livestock and grain owned at the time of entry of the divorce decree.[2]

2. Ethel can hardly be heard to complain as to this conclusion inasmuch as she appears to have acquiesced in the deferral of the property division, her counsel made no record as to the rea-

[¶ 11] With specific regard to the $30,000 debt for the anticipated loan for 1995 farm expenses, we note that a similar dispute also arose in *Miller, supra*. In that case, we held that the trial court erred in *excluding* from the marital debts a line of credit the husband had with a local bank to finance his current-year crop operations. *Miller*, 83 S.D. at 232, 157 N.W.2d at 540. Accordingly, we decline to find error in the trial court's inclusion of an analogous operating loan with the marital debts in the instant case.

[¶ 12] Based upon the foregoing, we find no clear error in the trial court's valuation of the marital estate.

### ISSUE 2

[¶ 13] **Did the trial court abuse its discretion in its division of marital property?**

Our standard of review of a trial court's division of marital property is well established. "This court will not disturb a division of property unless it clearly appears the trial court abused its discretion." While this discretion is broad, it is not uncontrolled and must be soundly and substantially based on the evidence ...

This Court has consistently recognized the principal factors to be considered in making an equitable property division as: (1) the duration of the marriage; (2) the value of the property; (3) the age of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Endres v. Endres*, 532 N.W.2d 65, 67 (S.D. 1995) (citations omitted).

[¶ 14] Here, the duration of the marriage was twenty-three years. The value of the parties' property has been previously discussed. At the time the trial court entered its findings, Ethel was forty-six years of age and Joseph was forty-seven. Although Joseph has suffered from phlebitis, his condition does not appear to be perma-

sons for the delay of nearly two years in the trial of this matter and counsel also offered little or no objection over the timing of the valuation.

nently debilitating and both parties are in relatively good health. Joseph is a high school graduate and, since leaving his employment at the meat packing plant, his primary occupation has been farming. He also sells crop insurance and, in 1994, he earned $3,148 from insurance sales. Ethel has a college degree and was employed as a teacher before the children were born. Ethel is currently employed by the Post Office and, in 1994, she earned gross wages from that employment of $38,353.90. Accordingly, the trial court found that, in assessing the parties' capacity and competence to earn a living, Ethel's ability is greater than Joseph's. Both parties actively participated in the farm work and contributed to the accumulation of assets. The income producing capacity of the parties's assets is limited. Most of the assets are fixed and, as a result, the parties are reliant on their incomes for living expenses.

[¶ 15] Based upon these factors, the trial court awarded Joseph assets with a net value of $86,551 and Ethel assets with a net value of $90,965. This is a relatively equivalent property distribution with a slight advantage going to Ethel, the appealing party. Based upon the factors discussed above, we find no abuse of discretion in this distribution.

## ATTORNEY'S FEES

[¶ 16] Joseph has filed a motion for an award of his appellate attorney's fees. His motion is accompanied by an itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). Based upon our consideration of the factors applicable to an award of appellate attorney's fees (*see Hogie v. Hogie,* 527 N.W.2d 915, 922 (S.D.1995)), we deny Joseph's motion and direct that both parties be responsible for their own appellate attorney's fees.

[¶ 17] Affirmed.

[¶ 18] SABERS, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 19] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

The stipulation and agreement signed by the parties on December 22, 1992, and filed with the court on January 5, 1993, provided in part as follows:

[T]o finalize the division of property owned by them or either of them, and all other rights of property otherwise growing out of the marriage relationship that either of them now has or may hereafter have or claim to have in any property of every kind, nature, and description, real or personal now owned or which may hereafter be acquired by either of them[.]

This stipulation was approved by the court and incorporated into the judgment and decree of divorce entered on December 22, 1992.

This court is required to sua sponte take notice of jurisdictional questions, whether presented by the parties or not. *Hardy v. West Cent. School Dist. No. 49–7,* 478 N.W.2d 832 (S.D.1991). In *Hardy* we held:

This court generally has a duty to determine whether the trial court has jurisdiction over a matter as a condition precedent to its right to decide the issues involved. *Long v. Knight Const. Co., Inc.,* 262 N.W.2d 207 (S.D.1978); *Sioux City Boat Club v. Mulhall,* 79 S.D. 668, 117 N.W.2d 92 (1962). Even if none of the parties have challenged jurisdiction, this court will, sua sponte, determine whether the lower court had jurisdiction. *Estate of Putnam,* 254 N.W.2d 460 (S.D.1977); *Shryock v. Mitchell Concrete Products, Inc.,* 87 S.D. 566, 212 N.W.2d 498 (1973); *Tri–State Milling Co. v. Board of County Comrs., Pennington County,* 75 S.D. 466, 68 N.W.2d 104 (1955). In the present case, although none of the parties challenged the circuit court's jurisdiction, we find it necessary to make a sua sponte determination.

*Id.* at 833.

The trial court in this case had no jurisdiction or authority whatsoever to reconsider the parties' property division after entry of the 1993 divorce decree. This is particularly true in view of the fact that the 1993 decree incorporated a stipulation and agreement in which both parties expressly waived their

interests in each other's property. Moreover, the fact that the parties acquiesced in the trial court's subsequent assumption of jurisdiction over the property division is of no consequence to this conclusion. Jurisdiction cannot be conferred by agreement, consent or waiver. *Matter of Guardianship of Sasse,* 363 N.W.2d 209, 212 (S.D.1985).

It is fundamental that a judgment rendered by a court without jurisdiction to pronounce it is void. *Nolan v. Nolan,* 490 N.W.2d 517, 520 (S.D.1992). Accordingly, the so-called amended divorce decree entered by the trial court in 1995 and purporting to divide the parties' marital property should be reversed for lack of jurisdiction. *See Zwanziger v. Zwanziger,* 286 N.W.2d 123, 124-25 (S.D.1979) (divorce decree void for lack of trial court jurisdiction reversed).

A contrary conclusion embracing the concept of deferred property divisions merely fosters creation of the very sort of issues Ethel raises in this appeal, i.e., whether the marital estate should be valued according to the time of entry of the divorce decree or according to the time of the property division itself.

After the trial court enters a judgment which grants the divorce and approves the parties' agreement, why is there a need for a trial? It is final. Do we not try a case prior to the entry of a judgment? Is this an example of placing the cart in front of the horse? Finally, nothing in the documents filed in January of 1993 provided for a trial at some later time on issues not encompassed in the parties' stipulation.

Therefore, I would reverse this case based on the fundamental issue of no jurisdiction to hold this trial some two years later. The parties were divorced as of December 22, 1992.