#24023-rev & rem-DG

**2007 SD 56**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

LOIS F. JOHNSON, 　　　　　　　　　　　Plaintiff and Appellant,

　v.

LEONARD P. JOHNSON, 　　　　　　　　　Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GENE PAUL KEAN
Judge

* * * *

VICTORIA M. DUEHR of
Bangs, McCullen, Butler,
　Foye & Simmons, LLP
Sioux Falls, South Dakota 　　　　　　　Attorneys for plaintiff
　　　　　　　　　　　　　　　　　　　and appellant.


GREGORY T. BREWERS
RICHARD A. JOHNSON of
Strange, Farrell & Johnson
Sioux Falls, South Dakota 　　　　　　　Attorneys for defendant
　　　　　　　　　　　　　　　　　　　and appellee.

* * * *

ARGUED MARCH 21, 2006

OPINION FILED **06/20/07**

#24023

GILBERTSON, Chief Justice

[¶1.] Lois F. Johnson appeals the property division in a judgment and decree of divorce from Leonard P. Johnson (Pete). We reverse and remand.

## FACTS AND PROCEDURE

[¶2.] Lois and Pete were married on October 20, 1972 and divorced on November 9, 2005 after thirty-three years of marriage. Both agreed to waive all claims to alimony or other spousal support, and all their children are adults, so there are no issues of child custody, child support or visitation. The issues on appeal solely concern the court's division and valuation of certain property.

[¶3.] Lois was born on February 1, 1947, and is in good health. She was working at the Department of Veteran's Affairs when she married Pete and had been working there for seven years before the marriage. She took a six-year leave of absence for the birth and early rearing of their children but returned and continues to work there presently. She intends to remain with the Department of Veteran's Affairs for at least four more years. Lois currently earns about $45,000 a year with annual raises of about three percent. She was also involved with the farming operation, especially during her six-year leave of absence.

[¶4.] Pete was at the time of marriage, and still is today, a self-employed farmer and livestock producer. He was born on February 26, 1940, and is seven years older than Lois. Pete has had both of his shoulders replaced due to an automobile accident and deterioration caused by a lifetime of work on the farm. At the time of the divorce, the residual effects of the automobile accident have apparently all but vanished; however, it was related to the trial court that Pete

-1-

suffered neck and back pain and continuous headaches as a result of the accident. Pete was also injured from an accident on the farm when a tailgate of a farm vehicle hit him on the head. However, the jolt seemed to rectify some of the neck and back issues he was suffering from as a result of the automobile accident.

[¶5.]     The farm income has fluctuated over the last five years, but there appears to be no great disparity between Lois and Pete in their present day ability to earn an income except that Pete's income depends upon good weather, reasonable expenses and a favorable market. Pete also currently receives social security benefits of $851.20 per month. As an employee of the Department of Veteran's Affairs, Lois enrolled in the Civil Service Retirement System (CSRS), which is a defined benefit retirement program. By opting to participate in the CSRS, Lois cannot collect social security benefits.

[¶6.]     On January 9, 1997, during the marriage, Pete and Lois were involved in an automobile accident. Pete sustained injuries to his neck and shoulders as a result of the accident. They both brought suit against the tort-feasor, and the jury returned a verdict for nearly $900,000. The jury partitioned $106,500 for Lois's loss of consortium claim and the balance for Pete's personal injuries. Pete and Lois executed a post-verdict settlement stipulation, agreeing to reduce the verdict to approximately $800,000. This resulted in a net payment of $480,786.93 to Pete and Lois. With this money, they paid off the mortgage on the farm ($168,055) and interest on the 2000 operating loan ($3,989.28), provided gifts to their children and others ($28,160), invested in an Edward Jones account ($200,000) and bought cattle ($38,000).

[¶7.]    As part of the divorce, Lois and Pete entered into a stipulation concerning the farm operation for the year 2005. Under the agreement, the operating loan for 2005 would be Pete's obligation and not considered marital debt. In turn, Lois agreed not to claim the 2005 crop or increase in cattle as assets of the marriage. Thus, they agreed to use early 2005 as the point in time for final valuation of the marital assets. The 2004 operating loan was paid off on January 14, 2005.

[¶8.]    Lois and Pete each hired a separate appraiser to determine the value of the farm assets, exclusive of the real estate. They agreed on the value of the real estate as $1,213,000. Lois retained Roger Peterson, a certified agricultural personal property appraiser, to appraise the livestock, feed and machinery. Peterson's appraisal took place on December 18, 2004. Peterson collected feed samples and tested its quality in order to establish its value and contacted several dealers, referenced a farm guide book, and used his personal knowledge to appraise the machinery. Peterson arrived at a total value of $557,108. Pete retained Tom Souvignier to appraise the livestock, feed and machinery. He inspected and valued the property at $340,359 on March 28, 2005.

[¶9.]    The court used the valuations provided by Souvignier, despite the fact that his valuation did not occur until more than two months after the 2004 operating loan was paid off. Although the court recognized that both experts were well-qualified, the court reasoned that Souvignier possessed a current up-to-date knowledge of prices given his work conducting actual sales and presiding over auctions on a regular basis.

[¶10.]     Each also hired an expert to determine the present day value of Lois' CSRS benefits. Lois retained Bridget VanHove Wenande, who arrived at a value of $315,000, and Pete hired Eide Bailly, who calculated a present day value of $354,000. The difference between these opinions was directly related to the discount rates for the deferral and payment period. Wenande also calculated the present day value of Pete's social security benefits. She used the same method as she did to arrive at the present day value for Lois' CSRS benefits and used the $851.20 per month benefits Pete was currently receiving in social security to arrive at an amount of $115,000. The court acknowledged that both experts hired to figure the present day value of the CSRS benefits were well qualified, yet accepted the value presented by Pete's expert, Eide Bailly.

[¶11.]     Lois claims Pete dissipated the marital estate by spending $3,301 on gifts for his girlfriend. Lois offered evidence of a ring, pendant, flowers and clothing purchased for the girlfriend and trips they allegedly took together. However, the court held Lois made no showing as to what amount of travel expenses were attributable to one person alone, and Pete testified that the ring purchased was for him, not a girlfriend. The court found sufficient evidence to attribute $567 as gifts for Pete's girlfriend.

[¶12.]     The trial court used the analytical approach to divide the personal injury award. Using this approach, the court looked to see if the award was replacing some marital asset, such as awards for medical treatment, future medical treatment, out-of-pocket expenses and loss of future income. If so, these were considered replacement amounts that should be distributed as marital assets. The

portion of the award set aside for physical injuries, pain and suffering and loss of consortium, however, were considered personal awards to Pete and Lois. The personal awards were denoted separate property and diminished the marital estate.

[¶13.]     The court concluded 50% of the verdict was for Pete, 11% for Lois and 39% was marital. However, the court determined only $321,954 was traceable to the proceeds of the settlement award. The remaining amount was either commingled, spent, untraceable or otherwise appropriately distributed equally. Thus, $160,977 of the personal injury settlement was deducted from Pete's estate as his separate property and $35,415 was deducted from Lois's estate as her separate property.

[¶14.]     Despite Lois' argument that Pete's social security benefits should be offset against her CSRS benefits, the court decided not to offset Pete's social security benefits because the present day value of such benefits had not been adequately proven. Instead, the court included the full value of Lois' CSRS benefits without making any equitable adjustment to account for the fact that Pete receives and will continue to receive social security benefits.

[¶15.]     Finally, the trial court granted Lois a net estate of $506,687[1] and Pete a net estate of $1,349,784,[2] leaving a difference of $843,097. The court determined

---

1.     The court awarded Lois the household personal property, her vehicle, checking account, Edward Jones investment account, and the full value of her CSRS benefits, less her debt and $35,415 denoted to her from the personal injury award.

2.     The court granted Pete the farmland, machinery, livestock, feed, and his checking accounts, less his debt and $160,977 denoted to him from the personal injury award.

that Pete should pay Lois $300,000 in order to balance the equitable distribution of

the marital assets.[3]  After the equalizing payment, the net division was 43% to Lois

and 57% to Pete.

[¶16.]     Lois appeals, raising five issues:

1.     Whether the trial court abused its discretion when it did
       not offset Pete's social security benefits against Lois'
       CSRS benefits.

2.     Whether the trial court erred when it distributed portions
       of the personal injury settlement as separate property
       instead of including the entire award in the marital
       estate.

3.     Whether the trial court's valuations of the checking
       accounts, Lois' CSRS, and livestock, feed and machinery
       were clearly erroneous.

4.     Whether the trial court erred when it credited Pete
       $357.00 for gifts to his girlfriend.

5.     Whether the trial court's net property division was an
       abuse of discretion.

## STANDARD OF REVIEW

'The valuation of property involved in a divorce proceeding will
not be overturned unless it is clearly erroneous.'  Priebe v.
Priebe, 1996 SD 136, ¶8, 556 NW2d 78, 80.  'Our standard of
review of a trial court's property division is that of an abuse of
discretion.'  Grode v. Grode, 1996 SD 15, ¶6, 543 NW2d 795,
799.  'The term "abuse of discretion" refers to a discretion
exercised to an end or purpose not justified by, and clearly
against reason and evidence.'  Id. ¶6, 543 NW2d at 800.

Fausch v. Fausch, 2005 SD 63, ¶5, 697 NW2d 748, 751.

---

3.     The court ordered the $300,000 be paid in annual payments of $25,000 for
       twelve years at 6% interest.

## ANALYSIS AND DECISION

[¶17.]    **1.    Whether the trial court abused its discretion when it did not offset Pete's social security benefits against Lois' CSRS benefits.**

[¶18.]    Lois requested that the court offset either the present day value of Pete's social security benefits or her hypothetical social security benefits against her CSRS benefits to render an equitable distribution of the marital property.  She concedes that Pete's social security benefits may not directly be a part of the marital property division.  *See* Mulder v. South Dakota Dep't. of Social Services, 2004 SD 10, ¶3 n2, 675 NW2d 212, 213 n2 ("social security benefits . . . may not be part of a marital property division").  However, she notes that there is no similar restriction for her CSRS benefits.  *See* Midzak v. Midzak, 2005 SD 58, ¶22, 697 NW2d 733, 739 ("retirement accounts and pensions . . . must be treated as marital assets and divided between the parties").  Thus, Lois requests an indirect offset to avoid the inequity of including the full amount of her CSRS benefits as marital property while Pete's social security benefits are entirely excluded.

[¶19.]    The trial court, assuming this Court would allow an offset, determined that Lois presented incomplete evidence on the present day value of Pete's social security benefits.  It was on this basis that the trial court denied the offset.  Upon review of the record, it appears the trial court did have sufficient evidence to determine the present day value of Pete's social security benefits.  Pete was already receiving a set monthly benefit, and Lois' expert presented a value and the calculations used to arrive at that value.  Thus, the only issue remaining is whether an offset is allowed.

[¶20.]    Whether social security benefits may be indirectly considered as an offset is a matter of first impression in South Dakota, and other states are split on the issue.  Some courts have "concluded that an offset of Social Security benefits is prohibited by the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution."  Webster v. Webster, 716 NW2d 47, 55 (Neb 2006).  "Under 42 U.S.C. § 407(a) (2000), the transfer or assignment of Social Security benefits is forbidden and, in general, protects these benefits from 'execution, levy, attachment, garnishment, or other legal process.'"  Id. at 54.  Although Congress allowed an exception for collection of past-due child support or alimony, it excluded from that exception payment obligations arising from an equitable distribution of property or other division of property between former spouses.  Id. (citing 42 USC § 659(a) and (i)(3)(B)(ii) (2000)).

[¶21.]    "The U.S. Supreme Court has not specifically addressed whether a state court can indirectly offset or otherwise consider the parties' respective Social Security benefits in dividing marital property in a dissolution proceeding."  Id. However, "several state courts look to the Court's decision in Hisquierdo v. Hisquierdo, 439 US 572, 99 SCt 802, 59 LEd2d 1 (1979), as instructing them that Social Security is not subject to an indirect adjustment through offset."  Id. (citing In re Marriage of James, 950 P2d 624, 628 (ColoApp 1997); Johnson v. Johnson, 726 So2d 393, 396 (FlaApp 1999); In re Marriage of Crook, 813 NE2d 198, 202 (Ill 2004); In re Marriage of Boyer, 538 NW2d 293, 295 (Iowa 1995); Olson v. Olson, 445 NW2d 1, 7 (ND 1989); Reymann v. Reymann, 919 SW2d 615, 617 (TennApp 1995); In re Marriage of Zahm, 978 P2d 498, 502 (Wash 1999); Berthiaume v. Berthiaume, 1991

WL 90839 (MinnApp 1991) (unpublished)). *See also* Neville v. Neville, 791 NE2d 434, 436 (Ohio 2003); Depot v. Depot, 893 A2d 995, 1000 (Me 2006); Wolff v. Wolff, 929 P2d 916, 921 (Nev 1996); *In re* Marriage of Swan, 720 P2d 747, 751 (Or 1986).

[¶22.] In *Hisquierdo*, "the Supreme Court held that (1) a direct division of Railroad Retirement benefits violated the nonassignment provision of the Railroad Retirement Act; and (2) using other assets to balance or offset one spouse's expected Railroad Retirement benefits was tantamount to anticipating and dividing those benefits in violation of the Act." *Depot*, 893 A2d at 999-1000 (citing *Hisquierdo*, 439 US at 583, 588-90, 99 SCt 802, 59 LEd2d 1). In that case, the Supreme Court analogized the Railroad Retirement Act benefits to social security benefits. *Hisquierdo*, 439 US at 575, 99 SCt at 805, 59 LEd2d 1. The Court reasoned that neither social security nor railroad retirement benefits are contractual. *Id*. "Congress may alter, and even eliminate, them at any time." *Id*. The Railroad Retirement Act is also subject to an anti-assignment provision similar to the Social Security Act. *Id*. (citing 45 USC § 231m). In concluding that an offset was improper, the Court reasoned that an offsetting award would upset the statutory balance and impair economic security just as surely as would a regular deduction. *Id*. at 588, 99 SCt at 811, 59 LEd2d 1.

[¶23.] These courts have also looked to the fact that Congress provided a specific limited avenue for divorced persons to obtain a share of the former spouse's benefits in the Social Security Act. *Webster*, 716 NW2d at 55 (citing 42 USC § 402(b)(1)(A) through (D), and (c)(1)(A) through (D) (2000)). According to these courts, this statutory provision portrays Congress' intent to preempt state law

property division schemes as applied to the social security benefits of a spouse upon divorce. *In re* Marriage of Swan, 720 P2d at 751-752.

[¶24.]     However, some courts allow an indirect offset. *Webster*, 716 NW2d at 54 (citing Kelly v. Kelly, 9 P3d 1046, 1048 (Ariz 2000); Panetta v. Panetta, 851 A2d 720, 728 (NJ 2004); Eickelberger v. Eickelberger, 638 NE2d 130, 135 (OhioApp 1994); Cornbleth v. Cornbleth, 580 A2d 369, 372 (Pa 1990)). *See also* Harshbarger v. Harshbarger, 814 NE2d 105, 110 (OhioApp 2004). The *Harshbarger* court "offset . . . the actual amount of the Social Security spouse's Social Security benefits accrued during the marriage against the retirement benefits of the non-Social Security spouse accrued during the marriage." 814 NE2d at 110. And, the *Kelly* court, utilizing the hypothetical approach, determined the present value of the non-social security spouse's social security benefits he would have received had he participated in the system during the marriage. 9 P3d at 1048. Then, the court deducted this hypothetical social security calculation from the present value of the non-social security spouse's CSRS pension on the date of dissolution. *Id.*

[¶25.]     Most courts utilize yet another, less restrictive approach. These courts disallow an offset but allow a general consideration of a party's anticipated social security benefits in the overall scheme when making a property division. *Webster*, 716 NW2d at 55 (citing *In re* Marriage of Morehouse, 121 P3d 264, 266-67 (ColApp 2005); *In re* Marriage of Boyer, 538 NW2d at 296; *In re* Marriage of Brane, 908 P2d 625, 628 (KanApp 1995); Bradbury v. Bradbury, 893 A2d 607, 609 (Me 2006); Mahoney v. Mahoney, 681 NE2d 852, 856 (Mass 1997); Rudden v. Rudden, 765

SW2d 719, 720 (MoApp 1989); *Neville*, 791 NE2d at 437; *In re* Marriage of Zahm, 978 P2d at 502). *See also Depot*, 893 A2d at 1002.

[¶26.]     These courts generally reason:

> 'While the anti-reassignment clause of the Social Security Act precludes a trial court from directly dividing social security income in a divorce action, a trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property.'

*Depot*, 893 A2d at 1000 (quoting *In re Marriage of Zahm*, 978 P2d at 502). They also "see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement." *In re Marriage of Boyer*, 538 NW2d at 296. Therefore, these courts conclude that "while a trial court may not distribute marital property to offset the computed value of Social Security benefits, it may premise an unequal distribution of property—using, for example, a 60-40 formula instead of 50-50—on the fact that one party is more likely to enjoy a secure retirement." *In re Marriage of Morehouse*, 121 P3d at 267.

[¶27.]     We agree with the majority approach that social security benefits may be considered as a factor, among others, when dividing marital property. This adheres to the federal restrictions, for it is not a direct division of Pete's social security.[4] And, at the same time, it recognizes and compensates for the inequity of

---

4.     "A divorce court's consideration of a spouse's anticipated or actual Social Security benefit payments as a relevant factor . . . does not represent a transfer or assignment of 'the right of any person to any future payment

(continued . . .)

including all of Lois's CSRS benefits in the marital estate while Pete's social security benefits are entirely excluded. It also comports with the general rule that the trial court is not tied to any mathematical formula when structuring the division of property, and neither party is entitled to a 50-50 division of the marital estate. Thus, a court may premise an unequal distribution of marital property on the fact that one party is likely to receive or, in this case, is receiving social security benefits.

[¶28.] **2. Whether the trial court erred when it distributed portions of the personal injury settlement as separate property instead of including the entire award in the marital estate.**

[¶29.] Lois argues that the full value of the personal injury proceeds should have been included in the marital estate because the proceeds have all been commingled. She alleges the trial court abused its discretion when it denoted $35,415 of the proceeds as Lois' separate property and $160,977 as Pete's.

[¶30.] There are four South Dakota decisions which discuss personal injury awards in the context of divorce proceedings. One such case held that inclusion of a personal injury settlement award in the marital estate was not error. *Wipf v. Wipf*, 273 NW2d 124, 125 (SD 1978). In *Wipf*, both parties were injured in an accident that occurred during the course of the marriage, and the trial court ordered both parties to endorse the settlement check, which represented payment of their

---

(. . . continued)
       under the portion of the Social Security Act that governs old-age, survivors, and disability insurance benefits' in violation of the Social Security Act's anti-assignment provision." *Depot*, 893 A2d at 1001 (quoting 42 USCA § 407(a)).

respective claims. *Fink v. Fink*, 296 NW2d 916, 918 (SD 1980). However, this Court concluded in *Fink*, that settlement proceeds were not marital assets subject to distribution when the cause of action for personal injuries arose prior to the marriage and the proceeds were received nearly a year after commencement of the divorce action. *Id.* at 919.

[¶31.] Also, in *Henrichs v. Henrichs*, this Court, relying on *Wipf* and *Fink*, pronounced that "settlement proceeds are marital property subject to distribution." 426 NW2d 569, 571 (SD 1988). But, in *Kappenmann v. Kappenmann*, this Court set aside a pending personal injury claim to the wife. 479 NW2d 520, 525 (SD 1992). All four cases were affirmed by this Court so our deferential standard of review obviously came into play. Moreover, that discretion may be exercised because there may be a distinction between when the injuries arose during the course of the marriage and the compensation was received during that period and otherwise.

[¶32.] In this case, the trial court used the analytical approach presented by the Nebraska Supreme Court to divide the personal injury settlement proceeds. Parde v. Parde, 602 NW2d 657, 662 (Neb 1999). The *Parde* Court explained that there are generally two approaches utilized to decide the extent to which an injured party's personal injury award should be included in the marital estate—the analytical approach and the mechanical approach. *Id.* "In the analytical approach, courts analyze the nature and underlying reasons for the compensation." *Id.* "Only those portions of a personal injury award that represent compensation for past wages, medical expenses, and other items which diminish the marital estate are included within the marital estate." *Id.* Compensation for purely personal losses,

such as pain, suffering, disfigurement, disability, or loss of post-divorce earning capacity, are not included in the marital estate. *Id.* at 663. Meanwhile, "under the mechanical approach, all the moneys realized from a personal injury action are placed in the marital estate." *Id.* at 662.

[¶33.] According to *Parde*, only a minority of courts apply the mechanical approach. *Id.* at 663. "These courts note that personal injury awards are not neatly categorized under the traditional definitions of separate property and therefore hold that personal injury awards are entirely marital property." *Id.* The Nebraska Supreme Court decided the analytical approach was more consistent with the basic rule that the marital estate should include only the property created by the marital partnership and adopted that approach. The trial court adopted this approach as well and decided the portion of the jury verdict for medical treatment, future medical treatment, out-of-pocket expenses and loss of future income were all replacement amounts that should be considered marital assets. On the other hand, the portion for physical injuries, pain and suffering and loss of consortium were deemed personal awards and not included in the marital estate.

[¶34.] We agree with the reasoning in *Parde*, and conclude that the analytical approach is appropriate in deciding the extent to which a personal injury award should be included in the marital estate. Like the *Parde* Court, we add "that the burden of proof to show the property is nonmarital remains with the person making the claim." *Parde*, 602 NW2d at 663. Also, this approach is limited in application to cases where the jury returned a partitioned verdict. In cases where a general verdict is issued, this approach cannot be utilized. Thus, we affirm the trial court's

use of the analytical approach and the court's distribution of the personal injury proceeds in this case.

[¶35.]    **3.    Whether the trial court's valuations of the checking accounts, Lois' CSRS, and livestock, feed and machinery were clearly erroneous.**

[¶36.]    Lois claims the valuation date should have been January 14, 2005 for all assets, for this was when the 2004 operating loan was paid off. She contends this is consistent with the parties' agreement that Lois would not be responsible for any of the 2005 operating loan or entitled to any of the cattle or crops acquired in 2005. Thus, Lois maintains that her December 18, 2004, valuation of the livestock, feed and machinery should have been used by the trial court, because her appraisal was completed closer to the payoff date of the 2004 operating loan. She claims the trial court erred when it used Pete's valuation conducted on March 28, 2005, nearly two and a half months after the operating loan was paid off. She also urges the Court to adopt either her valuation of her CSRS benefits or a value between the two provided by the parties. Finally, Lois alleges that the trial court erred when it valued Lois' checking and savings accounts near the January 2005 date but used a date closer to trial for Pete's account.

[¶37.]    "On review of a property division, this court will not attempt to place valuations on the assets because that is a task for the trial court as the trier of fact." Geraets v. Geraets, 1996 SD 119, ¶7, 554 NW2d 198, 200. "The only time this court interferes with the valuations determined by the trial court is when it has made a clearly erroneous valuation finding." *Id.* Absent special circumstances, the date of the granting of the divorce is the proper time for the determination of the value of

the estate for purposes of a property division. *Id*. ¶8. For instance, this Court found "no error by the trial court in valuing the marital estate according to the time of its receipt of valuation evidence as opposed to the time of its entry of the divorce decree." *Id*. ¶10, 554 NW2d at 201. "We do not require exactitude in the trial court's valuation of assets; it is only necessary that the value lie within a reasonable range of figures." DeVries v. DeVries, 519 NW2d 73, 75 (SD 1994). Also, a trial court is not required to accept either party's proposed valuation, but the value must be within the range of evidence presented to the court. *Id*. at 76.

[¶38.]     In this case, the trial court used various dates of valuation. For instance, the trial court used the January 31, 2005, value of Lois' checking and savings accounts but used the August 23, 2005, value of Pete's accounts. Lois presented evidence that the value of Pete's checking account on January 14, 2005, was $21,437.99 and on February 18, 2005, it was $4,799.24. Pete, however, offered a value of $5,725 as of August 23, 2005 for his account, and the trial court accepted that value. The trial court also accepted the appraisal that took place two and a half months after the operating loan was paid off, despite the parties' agreement that Lois would not be responsible for any debts or entitled to any profits after that time.

[¶39.]     Because there is no apparent reason for the trial court using different valuation dates, we remand for the court to determine the value of both Lois' and Pete's accounts using the same valuation date. The value of the livestock, feed and machinery should also be reconsidered to ensure the parties' agreement concerning the operating loan is fulfilled. The court should utilize the value of these assets at

the time closest to the time the operating loan was paid off. On the other hand, the trial court did not error in valuing the CSRS benefits using the value presented by Pete's expert. The only difference noted between the valuations was the discount rate, which is subjectively used and commonly fluctuates.

[¶40.]     **4.    Whether the trial court erred when it credited Pete $357 for gifts to his girlfriend.**

[¶41.]     Lois claims Pete dissipated the marital estate by spending $3,301 on gifts for his girlfriend. The trial court held otherwise. The court concluded that Pete spent only $567 on gifts for his girlfriend and credited that amount. Lois contends that this conclusion was clearly erroneous. Once again, "we do not require exactitude in the trial court's valuation of assets; it is only necessary that the value lie within a reasonable range of figures." *DeVries*, 519 NW2d at 75. Also, a trial court is not required to accept either party's proposed valuation. *Id.* at 76. In this case, the trial court reviewed the evidence and testimony of each of the parties and decided the evidence supported only a $567 credit for gifts spent on Pete's girlfriend. Thus, we find the trial court's valuation is supported by the evidence, within a reasonable range of figures and not clearly erroneous.

[¶42.]     **5.    Whether the trial court's net property division was an abuse of discretion.**

[¶43.]     Lois argues that the trial court's property division awarding a net estate of $1,349,784 to Pete and $506,687 to Lois with a $300,000 cash equalizing payment awarded to Lois was an abuse of discretion. Her assertion is based upon her award of only 43% of the marital estate and the trial court's inclusion of 2005 debt in the property division, which the parties agreed would not be Lois'

responsibility. Lois also claims that the court doubled her $3,460 tax refund by twice allocating the amount to Lois—once in her checking account and again in the court's division of the tax refund.

[¶44.]     "When a trial court grants a divorce, SDCL 25-4-44 allows the court to equitably divide the marital estate regardless of the ownership of the property." Novak v. Novak, 2006 SD 34, ¶4, 713 NW2d 551, 552. This Court has identified seven factors to consider when dividing marital property, including:

> (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income producing capacity of the parties' assets.

*Id*. A trial court, however, is not bound by any mathematical formula. *Grode*, 1996 SD 15, ¶9, 543 NW2d at 800.

[¶45.]     The court considered evidence relating to all of the seven factors. The marriage between the parties was of a significant length of thirty-three years. When Lois and Pete were married, they had few assets, but throughout the marriage they accumulated assets approaching two million dollars in value. Lois is fifty-eight and Pete is sixty-five years old, and although Lois' health is good, Pete's health is not as good. Pete has had both shoulders replaced and suffered neck and back pain and continuous headaches as a result of the automobile accident.

[¶46.]     There is no great disparity in present day ability to earn income by either, although Pete's income depends upon good weather, reasonable expenses and a favorable market. Also, Pete has had to hire work to be done on the farm due to his condition. However, he has not had to reduce the overall size of his operation

and has no plans for doing so or for leaving the farm. Lois is still employed with the Department of Veteran's Affairs and plans on remaining there for at least four more years. She earns about $45,000 a year with annual raises of about three percent.

[¶47.]     Furthermore, the court acknowledged Lois' contribution to the farm in the early years of the marriage, but also noted the decline in assistance since returning to work at the Department of Veteran's Affairs. The court also considered the income producing capabilities of the marital assets, including the farm, investments, money market fund and cattle; however, the court noted that this factor diminishes in importance when one of the parties has full-time employment.

[¶48.]     After a thorough consideration of these factors and distribution of the property, the court ordered Pete to make a cash payment to Lois in order to balance the equitable distribution of the marital assets. The court noted that this would recognize the length of the marriage, acknowledge Lois' contributions to the farm, provide her with assets so that she has a balanced earning capacity equivalent to Pete, and address their respective ages and health.

[¶49.]     Thus, it is clear from the record that the court properly considered all of the relevant factors in its property division. However, Pete acknowledged during trial that certain expenses should not be included as marital debt as they were expenses for 2005, which, by agreement between the parties, were not marital.[5] The court nevertheless included these amounts as marital debt. On remand, the

---

5.     Pete testified that the pasture expenses ($4,104) and pasture rent ($6,992) were expenses for 2005, and that the cattle expenses/vet and hired help ($7,866) were for both 2004 and 2005. However, all of these debts were deducted from Pete's estate in the net property division.

court should uphold the parties' agreement and ensure that this debt is not included in the property division. The court should also reconsider whether Lois' tax refund was included in her estate twice, thus erroneously increasing her estate by $3,460. Also on remand, the court should reconsider the net property division and make any necessary adjustments consistent with the other holdings in this opinion, including a consideration that Pete is and will continue receiving social security benefits.

[¶50.]     Each party shall be responsible for their own appellate attorney fees.

[¶51.]     Reversed and remanded.

[¶52.]     SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.