## S04F1710. LANIER v. LANIER.
(608 SE2d 213)

THOMPSON, Justice.

After a bench trial, the trial court entered a final judgment and decree of divorce, terminating the 31-year marriage between appellee Sylvia Lanier and appellant Oscar Lanier, and awarding alimony to Ms. Lanier. In this appeal we are called upon to decide an issue of first impression in Georgia: whether certain retirement benefits Mr. Lanier expects to receive under the Railroad Retirement Act of 1974, 45 USC § 231 et seq., as amended in 1983 ("the Act"), may be considered as income to the recipient, and thus a source of alimony payments. We hold that they may, and we affirm the judgment below.

1. The trial court awarded Ms. Lanier a lump sum alimony payment of $25,000, plus $400 per month as permanent alimony, until she "dies, remarries, or cohabits with another person as contemplated by OCGA § 19-6-19 (b), or [Mr. Lanier] begins to receive retirement benefits under either the ILA [International Longshoremen's] Pension and Welfare Plan[1] or the Railroad Retirement Act, whichever first occurs." Another provision relating to Mr. Lanier's railroad retirement benefits awarded Ms. Lanier the sum of $869.50 per month "in the form of alimony" based on Mr. Lanier's eligibility for benefits under the Act, "which payments would not commence until the sixteenth month after Mr. Lanier's initial receipt of such benefits." (Half of Mr. Lanier's expected monthly benefits under the Act amounts to $877.50.)

---

[1] Mr. Lanier is eligible to receive retirement benefits as a result of his former employment with CSX Railroad, as well as from his present work as a longshoreman. His ILA pension will amount to $729 per month; upon his receipt of those benefits, Ms. Lanier will be entitled to receive $546.50 from that fund in the nature of a property division.

The evidence established that at age 62, Mr. Lanier will be eligible to receive railroad retirement benefits under the Act. The Act provides for two tiers of benefits which resemble both a private pension program and a social welfare plan. Tier I benefits are equivalent to those the employee would receive if covered by the Social Security Act, 42 USC § 401 et seq. These benefits are not considered marital property subject to division in a divorce action. See 45 USC § 231m (a). Tier II benefits are supplemental annuities which, like a private pension plan, are tied to earnings and career service, and which are subject to distribution as marital property. See 45 USC § 231m (b) (2); *Pearson v. Pearson*, 200 W. Va. 139 (C) (488 SE2d 414) (1997). Mr. Lanier expects to receive $1,469 per month in Tier I benefits, and $286 per month in Tier II benefits; a monthly total of $1,755.

Mr. Lanier asserts that under *Hisquierdo v. Hisquierdo*, 439 U. S. 572 (99 SC 802, 59 LE2d 1) (1979), the trial court was without authority to consider his Tier I benefits when calculating alimony. *Hisquierdo*, however, does not preclude such an award. In that case, the parties "waived their claims to spousal support," 439 U. S. at 579, and the sole issue before the Court was whether a state court could consider an interest in Tier I benefits under the Act for purposes of dividing community property in a divorce proceeding.[2] Although the Court ruled that distribution of Tier I benefits cannot be considered marital property subject to equitable division, it made a distinction between consideration of those benefits for purposes of spousal support. In so doing, *Hisquierdo* recognized that a 1977 amendment to the Social Security Act expressly overrides § 231m, in that the amendment "permit[s] and encourage[s] garnishment of Railroad Retirement Act benefits for the purposes of spousal support, and those benefits will be claimed by those who are in need." Id. at 590 (IV). In contrast, the retirement benefits may not be reached for community property claims. Id. at 587 (III) (A).

Other courts have interpreted the Act in a similar manner. In *In re Marriage of Zappanti*, 80 P3d 889 (Colo. 2003), the court followed *Hisquierdo* by holding that Tier I benefits cannot be classified as marital property subject to equitable distribution, but further ruled that the same funds can be "an income source to be considered in determining [the payee's] child support obligation." Id. at 895 (III). See also *Talutto v. Talutto*, 375 Pa. Super. 302 (544 A2d 482) (1988) (while payee's railroad retirement benefits were specifically excluded

---

[2] The *Hisquierdo* Court explained the distinction between the two tiers of benefits provided under the Act: Tier I benefits are equivalent to those the employee would receive if covered by the Social Security Act, while Tier II benefits are supplemental annuities which are tied to earnings and career service.

by the Act for purposes of property division upon divorce, the trial court considered the benefits as income for alimony purposes); *Pearson v. Pearson*, supra (*Hisquierdo* only precludes Tier I benefits from being considered as divisible marital property; it does not preclude the use of Tier I benefits to pay alimony); *In re Marriage of Flory*, 171 Ill. App. 3d 822 (525 NE2d 1008) (1988) (the Social Security Act contains an express exception to the Railroad Retirement Act's anti-assignability clause with regard to a legal obligation to make alimony payments, 42 USC § 659 (a)); *Frost v. Frost*, 581 SW2d 582, 583 (Ky. Ct. App. 1979) *(Hisquierdo* "made clear that while a pensioner's rights cannot be directly assigned, it is permissible to make awards of maintenance and child support which take account of those funds as constituting all or part of the obligor's ability to pay").

In the context of state family law, the Supremacy Clause demands that state law be overridden only when it does "major damage to clear and substantial federal interests. . . . The pertinent questions are whether the right . . . conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." (Punctuation omitted.) *McCarty v. McCarty*, 453 U. S. 210, 220 (101 SC 2728, 69 LE2d 589) (1981). As the foregoing authority illustrates, Mr. Lanier's railroad retirement funds may be considered as a source of income for purposes of assessing alimony, and such ruling does not contravene federal law.

2. We also reject Mr. Lanier's assertion that the trial court circumvented the nondivisible nature of his Tier I benefits by awarding alimony in an amount essentially equivalent to half his anticipated future compensation. Here, the trial court expressly acknowledged that Tier I benefits are nondivisible as marital property, and it did not consider those funds in equitably dividing the marital assets. Instead, it considered Mr. Lanier's expectation in receiving his railroad retirement benefits as a future source of income in calculating his alimony obligation. The court carefully considered Ms. Lanier's needs and Mr. Lanier's ability to pay, finding that $400 per month in permanent alimony was appropriate until such time as Mr. Lanier would receive his ILA pension, or 16 months after he begins receiving his railroad retirement benefits. It is of no consequence that the court did not set an event (such as death) to terminate the alimony derived from the income from railroad retirement benefits. The termination of alimony is controlled by OCGA § 19-6-5 (b), which provides: "All obligations for permanent alimony, however created, the time for performance of which has not arrived, shall terminate upon remarriage of the party to whom the obligations are owed unless otherwise provided." "This statute applies to alimony obligations created by verdict." *Metzler v. Metzler*, 267 Ga. 892 (1) (485 SE2d 459) (1997). For

the foregoing reasons, we reject the argument that the trial court circumvented federal law in calculating the award of alimony.

3. Ms. Lanier filed a pretrial motion seeking permission to cross-examine two of her own witnesses to show that Mr. Lanier fraudulently conveyed marital assets to his close friend, Tommie Blackshear, and to his sister, Judy Mincey, in anticipation of the divorce. The trial court allowed the cross-examination.

Trial courts are clothed with discretion to permit cross-examination of one's own witness "when, from the conduct of the witness or other reason, justice shall require it." OCGA § 24-9-63; *Spencer v. State*, 260 Ga. 640 (8) (398 SE2d 179) (1990) (a trial court retains discretion to allow leading questions on direct examination). Reversible error only occurs when trial courts abuse that discretion to the extent that there is prejudice and injury. *Blue Cross of Ga./ Columbus v. Whatley*, 180 Ga. App. 93 (7) (348 SE2d 459) (1986). Moreover, such an abuse of discretion will not constitute reversible error " 'unless palpably unfair and prejudicial to the complaining party.' [Cits.]" *Clary Appliance &c. Center v. Butler*, 139 Ga. App. 233, 235 (2) (228 SE2d 211) (1976).

The trial court allowed Ms. Lanier to cross-examine Blackshear and Mincey to show that certain financial transactions (repayment of a $50,000 loan to Blackshear on the day the complaint was filed, and what appeared to be a sham sale of a time-share to Mincey) in anticipation of the divorce were done to liquidate marital assets and to defeat the equitable distribution of those assets. This is exactly the type of situation that OCGA § 24-9-63 contemplates. In fact, the trial court as the trier of fact concluded that the financial transactions with Blackshear and Mincey were "a sham and fraud upon the court and the plaintiff." Under the circumstances, we agree that deviation from the usual rules of evidence was authorized to achieve the ends of justice.

4. At trial, Ms. Lanier offered Mr. Lanier's tax returns for 1997 and 1998 into evidence.[3] Mr. Lanier objected on the ground that the evidence impermissibly placed his character in evidence because the information contained in the returns may tend to impeach his trial testimony. The court allowed the questioning, noting that the tax returns may bear on Ms. Lanier's entitlement to alimony and Mr. Lanier's ability to pay; however, Mr. Lanier invoked the Fifth Amendment and refused to answer any questions relating to those returns. We find neither harm, nor an abuse of the trial court's discretion in admitting the tax returns. See generally *Clifton v. Clifton*, 249 Ga.

---

[3] Mr. Lanier's tax returns for those years show that the parties were "married but filing separate returns."

831 (1) (294 SE2d 518) (1982) (evidence which shows that disbursements by husband exceeded the amount he claimed as income on his tax return is admissible to aid the jury in determining the amount of alimony to be awarded); *Heidt v. Heidt*, 225 Ga. 719 (171 SE2d 270) (1969) (tax returns may support a jury's finding of substantial increase in ability to pay alimony); *Kitchin v. Kitchin*, 219 Ga. 417 (133 SE2d 880) (1963) (jury chose to believe income tax returns of one of the parties in opposition to conflicting sworn testimony); *Seagraves v. Seagraves*, 193 Ga. 280 (1) (18 SE2d 460) (1942) (tax returns admissible to show amount and value of property admitted by taxpayer to be his).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 24, 2005.

*McCorkle, Pedigo & Johnson, Kenneth P. Johnson*, for appellant. *Gilbert L. Stacy*, for appellee.