2006 ME 25

**Carol DEPOT**

v.

**David DEPOT.**

Supreme Judicial Court of Maine.

Argued: June 14, 2005.
Decided: March 29, 2006.

Justin W. Leary (orally), Sharon, Leary & DeTroy, Auburn, for plaintiff.

E. Chris L'Hommedieu (orally), L'Hommedieu Law Office, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

* Justice Paul L. Rudman sat at oral argument, but retired before this opinion was certified.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, and LEVY, JJ.

Dissenting: DANA, and CALKINS, JJ.

LEVY, J.

[¶ 1] David Depot appeals from a divorce judgment entered in the District Court (Lewiston, *Lawrence, J.*) contending that the court erred when it awarded Carol Depot marital property to offset a portion of an accountant's estimate of the present value of David's expected Social Security benefits. Because we agree, we vacate the judgment.

## I. BACKGROUND

[¶ 2] Carol Depot filed for divorce after thirty-three years of marriage. At the time of the divorce, she was fifty-five years old and David Depot was fifty-seven. The court entered a detailed divorce judgment with extensive findings of fact and legal analysis. In identifying the parties' marital property, the court explicitly included the present value of the parties' expected Social Security benefits [1] and attempted to accomplish an equal division of the parties' retirement related assets in its overall distribution of the marital property:

|  | Carol | David |
|---|---|---|
| Social Security benefits | $116,976 | $255,382 |
| Maine State Retirement System benefits | 67,623 | |
| Carol's IRA (Auburn Savings and Loan) | 4,047 | |
| David's IRA (Fidelity) | 85,868 | 19,132 |
|  | $274,514 | $274,514 |

[¶ 3] The court awarded Carol almost eighty-two percent ($85,868) of David's Fidelity IRA account to balance the perceived "present value" of all of their existing retirement assets, including Social Security benefits:

> The court is considering the value of the Social Security benefits based upon the Law Court decision in *Pongonis v. Pongonis,* 606 A.2d 1055 (Me.1992) (held that the deferred distribution value of Social Security benefits is a relevant factor to be considered in this division of marital property). Defendant's Social Security benefits have a value significantly greater than the combined value of Plaintiff's IRA account, Social Security benefits and Maine State Retirement Account and this disparity is directly relevant to the determination of the parties' Fidelity IRA account.

The court also awarded Carol general spousal support in the initial amount of $200 a month, increasing to $400 a month until 2007, and then increasing to $600 per month to continue until she dies or remarries, or until David dies or reaches the age of sixty-six. This appeal followed.

## II. DISCUSSION

[¶ 4] David argues that Social Security benefits are not marital property and any consideration of anticipated Social Security benefits that impacts the division of marital property amounts to an offset prohibited by *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). Carol argues that the court committed no error in the manner in which it considered Social Security benefits. Whether Social Security benefits are marital property and whether a court may offset a perceived prospective disparity in Social Security benefits by awarding one spouse a com-

---

1. Carol introduced an accountant's present value estimate of both parties' anticipated Social Security benefits and her Maine State Retirement System benefits. The accountant referred to the parties' Social Security statements, with projected monthly benefits commencing at age sixty-six, and assumed future employment until retirement. In estimating the present value of Carol's Maine State Retirement System benefits, the accountant projected her monthly benefits commencing at age sixty.

pensating share of other retirement benefits are questions of law that we review de novo. *See Spooner v. Spooner*, 2004 ME 69, ¶ 7, 850 A.2d 354, 358.

[¶ 5] We address, in turn: (A) whether Social Security benefits may be treated as "property" pursuant to 19–A M.R.S. § 953 (2005); (B) whether other marital property may be used as an offset to compensate one spouse for the anticipated Social Security benefits to be received by the other spouse; and (C) the extent to which anticipated Social Security benefit payments are a relevant factor in the division of marital property.

### A. Social Security Benefits are not Marital Property

[¶ 6] Courts that have considered the issue have universally acknowledged that Social Security benefits are not marital property and are not subject to division in divorce actions.[2] Several reasons support this principle. In the Social Security Act, Congress created an extensive and highly regulated benefit scheme, *cf. Helvering v. Davis*, 301 U.S. 619, 644–45, 57 S.Ct. 904, 81 L.Ed. 1307 (1937), and reserved to itself "[t]he right to alter, amend or repeal any provision of th[e Act]." 42 U.S.C.A. § 1304 (West 2003).

Thus, as opposed to divisible property, Social Security benefits are a "form of social insurance" in which beneficiaries have a "noncontractual interest." *Flemming v. Nestor*, 363 U.S. 603, 609, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). In § 402 of the Social Security Act, Congress enumerated certain benefits to be received by divorced individuals and the circumstances under which a divorced individual may receive a benefit based on his or her former spouse's benefits. *See* 42 U.S.C.A. § 402(b), (c) (West Supp.2005).

[¶ 7] Of particular importance to this discussion, in § 407(a) of the Act, Congress prohibited a beneficiary from transferring or assigning Social Security benefits to another, and prohibited the use of legal process to reach those benefits:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C.A. § 407(a) (West 2003). Although the Act creates a narrow exception

---

**2.** *See In re Marriage of Kelly*, 198 Ariz. 307, 9 P.3d 1046, 1047 (2000) (holding that Social Security benefits may not be divided as community property); *Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2, 4 (1999) (stating that "Congress has excluded from its definition of marital property any benefits from social security"); *In re Marriage of Morehouse*, 121 P.3d 264, 265 (Colo.Ct.App.2005) (stating "a trial court cannot distribute or divide Social Security benefits as marital property"); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 855–56 (1997) (holding that Social Security benefits are not marital property because Congress has expressed its intent to preempt this entire area of law by providing for divorced spouses in certain situations); *Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916, 920–21

(1996) (holding that Social Security benefits cannot be divided as community property); *Neville v. Neville*, 99 Ohio St.3d 275, 791 N.E.2d 434, 436 (2003) (citing *Hisquierdo* for the proposition that federal law preempts a state law that would authorize the equitable distribution of Social Security benefits in a divorce action); *In re Marriage of Swan*, 301 Or. 167, 720 P.2d 747, 750 (1986) (stating that "[i]ncluding the value of ... social security benefits ... in a division of marital property ... is contrary to the Social Security Act"); *In re Marriage of Zahm*, 138 Wash.2d 213, 978 P.2d 498, 502 (1999) (concluding "that federal statutes secure social security benefits as the separate indivisible property of the spouse who earned them").

to this rule by allowing for the collection of child and spousal support, 42 U.S.C.A. § 659(a) (West 2003), Congress has specifically excluded any similar payment obligation arising from "any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C.A. § 659(i)(3)(B)(ii) (West 2003).

■ [¶ 8] Federal law preempts any state law that otherwise authorizes the distribution of these benefits. *See Hisquierdo*, 439 U.S. at 575–76, 590, 99 S.Ct. 802 (holding Railroad Retirement Act's anti-alienation provision preempted state community property law); *see also McCarty v. McCarty*, 453 U.S. 210, 232, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (holding that military retirement pay was separate property because the federal military retirement scheme preempted state property laws). Although Congress has legislatively countermanded the holdings in *Hisquierdo* and *McCarty* by making railroad and military retirement benefits subject to community property law, *see* 45 U.S.C.A. § 231m(b)(2) (West 1986) and 10 U.S.C.A. § 1408(c)(1) (West 1998), Congress has not passed similar legislation with respect to the division of Social Security benefits.

[¶ 9] As the trial court noted in its judgment, we previously addressed whether a trial court may consider a spouse's anticipated Social Security benefits as a relevant factor in arriving at its division of the parties' pensions and other marital assets in *Pongonis*, 606 A.2d 1055. In *Pongonis*, the trial court's division of the parties' retirement assets was based in part on its findings regarding the annual income the wife was expected to receive from her Social Security benefits in the future. *Id.* at 1057–58. The husband, who was not eligible for Social Security benefits because he participated in the State retirement system, was expected to receive an-

nual retirement payments starting at $7800 and increasing to $15,300. *Id.* The wife was expected to receive $13,475 annually from a combination of Social Security benefits and her employer-sponsored pension plan. *Id.* at 1058. The trial court did not attribute a lump sum deferred distribution or present value to the anticipated Social Security benefits, and did not treat the benefits as if they were property. *Id.* We affirmed the trial court's consideration of the wife's anticipated Social Security benefit payments as a relevant factor, and its decision to award the husband's State retirement benefits to him and the wife's private retirement benefits to her. *Id.* at 1057–58.

■ [¶ 10] *Pongonis* does not stand for the proposition that a divorce court may attribute a lump-sum value to Social Security benefits, based on either deferred distribution or present value formulas, and treat the Social Security benefits as marital property. This is in harmony with § 407(a)'s prohibition on transfers and assignments of Social Security benefits. Thus, a Maine court may not assign a lump sum value to Social Security benefits and either transfer or offset those benefits when exercising its authority to divide marital property pursuant to 19–A M.R.S. § 953.

B. Marital Property May not be Used as an Offset to Compensate One Spouse for the Anticipated Social Security Benefits to be Received by the Other Spouse

■ [¶ 11] Although the United States Supreme Court has not directly addressed the issue of whether a state court may use marital property to offset anticipated Social Security benefits, in *Hisquierdo*, the Supreme Court addressed a similar question-pertaining to Railroad Retirement benefits. In that case, the Supreme

Court held that (1) a direct division of Railroad Retirement benefits violated the nonassignment provision of the Railroad Retirement Act; and (2) using other assets to balance or offset one spouse's expected Railroad Retirement benefits was tantamount to anticipating and dividing those benefits in violation of the Act. 439 U.S. at 583, 588–90, 99 S.Ct. 802. The Supreme Court expressly analogized Railroad Retirement Act benefits to Social Security benefits. *Id.* at 575, 99 S.Ct. 802. Accordingly, other courts have applied the *Hisquierdo* rationale to Social Security benefits, holding that transferring other assets to balance or offset expected Social Security benefits is not permitted. *See, e.g., In re Marriage of Crook,* 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 202 (2004); *Neville v. Neville,* 99 Ohio St.3d 275, 791 N.E.2d 434, 436 (2003). Because we conclude that Congress intended to preempt state law as applied to Social Security benefits, we adopt that holding.

◼ [¶ 12] In this case, the trial court attributed lump sum values to Carol's and David's expected Social Security benefits and divided David's Fidelity IRA in order to offset the greater value it attributed to David's Social Security benefits. Pursuant to *Hisquierdo,* the court's valuation and allocation of the parties' anticipated Social Security benefits runs afoul of § 407(a)'s prohibition on the transfer or assignment of such benefits because it constitutes an offsetting of those benefits. Accordingly, we vacate the judgment. Because the trial court will be faced on remand with dividing the marital property without an offset for anticipated Social Security benefits, we proceed to address the extent to which the trial court is authorized to consider those benefits in any way as a factor in its equitable distribution of marital property.

### C. Social Security Benefits as a "Relevant Factor" Pursuant to 19–A M.R.S. § 953 in Dividing Marital Property

[¶ 13] After *Hisquierdo,* courts have adopted two broad approaches to the relationship between marital property and Social Security benefits. A minority of jurisdictions have outright prohibited the consideration of Social Security benefits by a divorce court when dividing marital property. *See, e.g., In re Crook,* 286 Ill. Dec. 141, 813 N.E.2d at 204–05 (finding that any consideration of Social Security benefits amounts to an impermissible offset if it has any effect on the division of marital property); *In re Marriage of Swan,* 301 Or. 167, 720 P.2d 747, 751 (1986) (finding that the Social Security Act's anti-assignment provisions prohibit a family court from considering Social Security benefits when dividing marital property).

[¶ 14] Most courts, however, have taken a less restrictive approach, allowing consideration of a party's anticipated Social Security benefits as a factor among others, when dividing marital property:

> [W]hile the anti-reassignment clause of the Social Security Act precludes a trial court from directly dividing social security income in a divorce action, a trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property.

*In re Marriage of Zahm,* 138 Wash.2d 213, 978 P.2d 498, 502 (1999). *See also In re Marriage of Morehouse,* 121 P.3d 264, 267 (Colo.Ct.App.2005) (holding that although an offset is not permissible, a court may premise an unequal distribution of marital property on the fact that a party is likely to have greater Social Security benefits); *In re Marriage of Brane,* 21 Kan.App.2d

778, 908 P.2d 625, 628 (1995) (rejecting the argument that the anti-assignment provision of the Social Security Act prohibits a court from considering Social Security benefits in an equitable distribution jurisdiction); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 856–57 (1997) (affirming a trial court's decision to consider "Social Security benefits as one factor, among others, in making an equitable distribution of the distributable marital assets"); *Neville*, 791 N.E.2d at 437 (asserting that a court's "consideration of Social Security benefits in relation to all marital assets is the more reasoned approach").

■ [¶ 15] Our decision in *Pongonis* adopted this latter approach, expressly finding that "the provisions of [§ 407(a) do not prohibit] the court's consideration of [a spouse's] anticipated social security retirement benefits in determining a just division of the parties' marital property." 606 A.2d at 1058. Neither the letter nor purpose of § 407(a) of the Social Security Act compel courts to ignore expected annual Social Security benefit payments when undertaking their responsibility to equitably divide marital property. A divorce court's consideration of a spouse's anticipated or actual Social Security benefit payments as a relevant factor pursuant to 19–A M.R.S. § 953 does not represent a transfer or assignment of "[t]he right of any person to any future payment under [the portion of the Social Security Act that governs old-age, survivors, and disability insurance benefits]" in violation of the Social Security Act's anti-assignment provision. 42 U.S.C.A. § 407(a).

■ [¶ 16] Such consideration also does not violate § 407(a)'s prohibition against subjecting "the moneys paid or payable or rights existing under this subchapter ... to execution, levy, attachment, garnishment, or *other legal process*, or to the operation of any bankruptcy or insolvency law." *Id.* (emphasis added). Since *Hisquierdo* was decided, the Supreme Court had occasion to revisit § 407(a), and it adopted a restrictive view of the meaning of "other legal process" as used in that section:

> "[O]ther legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). A divorce court's treatment of a spouse's anticipated or actual Social Security benefit payments as a factor relevant to the equitable distribution of property is neither a judicial process "much like the processes of execution, levy, attachment and garnishment," nor a mechanism by which control over Social Security benefits "passes from one person to another." *Id.*[3]

[¶ 17] The approach we approved in *Pongonis* makes common sense. The

---

**3.** Notably, the Railroad Retirement Act's anti-assignment provision considered in *Hisquierdo* was more restrictive than the anti-assignment language of § 407(a):

> "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process *under any circumstances whatsoever, nor shall the payment thereof be anticipated ....*"

*Hisquierdo*, 439 U.S. at 576, 99 S.Ct. 802 (quoting 45 U.S.C. § 231m) (emphasis added). Section 407(a) does not contain lan-

court's role in property division is to accomplish a just division that takes into account "all relevant factors." [4] Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual "economic circumstances of each spouse at the time the division of property is to become effective." 19-A M.R.S. § 953(1)(C); *see also In re Marriage of Boyer*, 538 N.W.2d 293, 293–94 (Iowa 1995) (stating that "a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other"). Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property.

[¶ 18] Accordingly, the annual amount of anticipated Social Security benefit payments a spouse is expected to receive may be a "relevant factor" under section 953(1).[5] Although "relevance" necessarily turns on a multiplicity of factors, two stand out: First, whether it is reasonable to expect that one or both spouses will qualify for and receive Social Security retirement benefit payments in the reasonably foreseeable future; and second, whether the anticipated benefit payments are a substantial financial consideration when viewed in relation to the retirement assets and other sources of income that will be available to each spouse following the divorce. If both questions are answered in the affirmative, it is likely that the anticipated benefit payments are relevant to the court's analysis. *See Mahoney*, 681 N.E.2d at 856–57.

[¶ 19] Here, Carol and David have earned sufficient quarters to qualify for Social Security benefits, both are in their late-fifties and approaching retirement, and it is likely that they will soon rely on their expected Social Security benefits, in addition to their retirement savings, for their separate support. Their anticipated monthly Social Security benefits, therefore, are reasonably certain to affect their respective economic circumstances in an appreciable manner soon after their divorce. The court may, in the exercise of sound discretion, consider evidence of the parties' anticipated monthly Social Security benefit payments when deciding how to equitably divide their marital estate.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

DANA, J., with whom CALKINS, J., joins, concurring in part and dissenting in part.

[¶ 20] I agree with the Court's decision insofar as it holds that a trial court may

---

guage that corresponds to the highlighted portion quoted above.

4. Title 19–A M.R.S. § 953(1) (2005) directs that a court "shall divide the marital property in proportions the court considers just after considering all relevant factors."

5. The *Pongonis* decision contains a citation to former 19 M.R.S.A. § 722–A (1981 & Supp. 1991) with a parenthetical note that " '[t]he value of the property set apart to each spouse' is a relevant factor for the court's consideration in division of marital property." 606 A.2d at 1058. This citation and parenthetical can be read to suggest that Social Security benefits should be treated as non-marital property "set apart to each spouse." Because Social Security benefits are neither marital nor non-marital property, we expressly reject this suggestion.

not assign a dollar value to anticipated Social Security benefits or distribute marital property now to offset one spouse's future Social Security benefits. I respectfully dissent from that portion of the Court's opinion that authorizes trial courts to do the latter anyway.

[¶ 21] The United States Supreme Court, in deciding that using other assets to balance or offset one spouse's expected Railroad Retirement benefits was tantamount to anticipating and dividing those benefits in violation of federal law, wrote:

> If, for example, a nonemployee spouse receives offsetting property, and then the employee spouse dies before collecting any benefits, the employee's heirs or beneficiaries suffer to the extent that the offset exceeds the lump-sum death benefits the Act provides. Similarly, if the employee leaves the industry before retirement, and so fails to meet the "current connection with the railroad industry" requirement for certain supplemental benefits, the employee never will fully regain the amount of the offset. A third possibility, of course, is that Congress might alter the terms of the Act.... By barring lump-sum community property settlements based on mere expectations, the prohibition against anticipation prevents such an obvious frustration of congressional purpose. It also preserves congressional freedom to amend the Act, and so serves much the same function as the frequently stated understanding that programs of this nature convey no future rights and so may be changed without taking property in violation of the Fifth Amendment.

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 589–90, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (citations omitted).

[¶ 22] In my view, the only approach that complies with the federal prohibition against anticipating Social Security benefits is to not do it. Any consideration of Social Security benefits that has an impact on the equitable distribution of marital property amounts to an impermissible offset; any such consideration that has no effect on an equitable distribution is of no consequence. *See In re Crook,* 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 205 (2004).

[¶ 23] Leaving Social Security benefits out of the equation appears to be the only way to avoid the harm that federal law seeks to prevent, namely, adjusting property rights on the basis of an expectation of future Social Security benefits.[6] Encouraging the trial courts to consider future Social Security benefits when dividing marital property, without disclosing the impact of that consideration is, in my view, inappropriate.

---

**6.** I note that another option avoids the issue altogether. Instead of having spousal support end when David turns sixty-six, the court could have it continue into retirement. Social Security benefits can be considered as a source of income for the purpose of awarding spousal support, without contravening *Hisquierdo.* *See* 42 U.S.C.A. § 659(a) (West 2003) ("Notwithstanding any other provision of law, ... moneys due from, or payable by, the United States ... to any individual ... shall be subject ... to withholding ... to enforce the legal obligation of the individual to provide child support or alimony."). *See also Lanier v. Lanier,* 278 Ga. 881, 608 S.E.2d 213, 215 n. 2 (2005) (noting tier one Railroad Retirement benefits equivalent to Social Security benefits and illustrating how a court does not violate federal law when it considers expected railroad retirement benefits in assessing alimony).