WATTS, J.,
dissenting, in which HOTTEN, J., joins.
Respectfully, I dissent. The majority opinion raises several concerns. Specifically, among other things, the Majority exceeds the issue that is before this Court; the Majority’s holding will require trial courts to speculate about future Social Security benefits in divorce actions; and, as to the authority for its holding, the Majority relies on a provision of a statute that does not authorize speculation by trial courts about future economic circumstances of litigants. Contrary to the result reached by the Majority, I would affirm the judgment of the Circuit Court for Howard County and hold that Social Security benefits are not to be offset against the marital portion of a Civil Service Retirement System (“CSRS”) pension in a divorce action or to be considered a factor under Md. *199 Code Ann., Fam. Law (1984, 2012 Repl. Vol.) (“FL”) § 8-205(b) in determining a monetary award in a divorce action.
The only issue before this Court — which Milton Everett Jackson, Petitioner, raised in a petition for a writ of certiorAri — is as follows: “Should Maryland [follow] the majority of States and require a trial [court] to consider whether Social Security benefits should be offset against the marital portion of [a] CSRS pension upon dividing assets as a result of divorce?” (Emphasis added) (underlining and some capitalization omitted).
This issue indisputably arises from the facts of this somewhat-atypical divorce action, in which Gayle S. Jackson, Respondent, had Social Security benefits and a pension, while Petitioner, as a federal employee, had almost no Social Security benefits, but had a pension under the CSRS. In other words, Petitioner paid into the CSRS, but did not pay into Social Security. As the Social Security Administration explains, “[u]ntil 1984, employment by the [fjederal government was covered under the Civil Service Retirement System [] and not by Social Security. If you worked for a [fjederal agency during those years, you did not pay Social Security tax on your earnings[.]” Social Security Administration, Retirement Planner: Federal Government Employment, https:// www.ssa.gov/planners/retire/fedgovees.html[https://perma.cc/2 F6M-CQGA].
In addressing the facts set forth above, the Majority greatly exceeds the issue that is before this Court by issuing the broad holding that, in a divorce action, “in determining whether to grant a monetary award to adjust the equities and rights of the parties in marital property, ... a trial court is required to consider the parties’ actual or anticipated Social Security benefits as a relevant factor under F.L. § 8-205(b).” Maj. Op. at 192, 141 A.3d at 1138.
The statute to which the Majority refers, F.L. § 8-205(b), lists the considerations that a court must take into account in determining a monetary award as follows:
*200 The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, after considering each of the following factors:
(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
(2) the value of all property interests of each party;
(3) the economic circumstances of each party at the time the award is to be made;
(4) the circumstances that contributed to the estrangement of the parties;
(5) the duration of the marriage;
(6) the age of each party;
(7) the physical and mental condition of each party;
(8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property described in subsection (a)(2) of this section, or both;
(9) the contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;
(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and
(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.
(Emphasis added).
As to the authority for its holding, the Majority relies on F.L. § 8-205(b)(11), the “catchall” provision that enables a trial court to consider “any other factor that the court considers necessary or appropriate.” See Maj. Op. at 186, 141 A.3d *201 at 1135 (“[T]he Court of Special Appeals stated: ‘In an appropriate case, of course, it may be that a court could consider the fact that a party is receiving, or will receive, social security benefits, as ‘any other factor’ in determining whether to make a monetary award.’ We agree.” (Citation omitted)). In my view, contrary to the Majority’s reasoning, F.L. § 8-205(b)(11) does hot authorize a trial court to speculate as to future Social Security benefits. In other words, that F.L. § 8-205(b)(ll) provides that a court may consider “any other factor that the court considers necessary or appropriate” does not authorize a court to engage in speculation about a party’s future receipt of Social Security benefits.
With its inclusion of Social Security benefits as a factor to be considered under F.L. § 8-205(b)(11), the Majority’s broad holding will cause difficulties in countless divorce actions. The exact amount of Social Security benefits to which a person will be entitled in the future depends on several variables, such as the amount of money that a person earns prior to retirement and the age at which the person retires. Indeed, the Social Security Administration provides estimates, not guaranteed amounts, of Social Security benefits. Thus, it is inherently speculative to attempt to estimate an amount of Social Security benefits to which a person will be entitled in the future, and to base a monetary award in a divorce action on such an estimate.
Yet, the Majority expects trial courts to engage in such speculation, and leaves several important questions unanswered. How exactly should a trial court go about calculating future Social Security benefits? What if the trial court values future Social Security benefits at a certain amount, and, years later, it turns out that the trial court’s valuation was too high or too low? That outcome is not unlikely, given that, again, it is inherently speculative to attempt to pinpoint the exact amount of Social Security benefits to which a person will be entitled in the future.
Notably, in drafting F.L. § 8—205(b), the General Assembly carefully refrained from forcing trial courts to attempt to *202 predict the future. Instead, F.L. § 8—205(b)(3) requires a trial court to consider “the economic circumstances of each party at the time the award is to be made[.]” (Emphasis added). It is reasonable to require a trial court to ascertain a spouse’s existing economic circumstances; it is not reasonable to require a trial court to come up with an estimate as to a spouse’s future economic circumstances, including future entitlement to Social Security benefits.
As discussed above, in this case, one spouse had Social Security benefits, while the other spouse had almost no Social Security benefits. The out-of-State cases upon which the Majority relies, in which both parties worked and earned Social Security benefits, reach disparate outcomes.
For example, the Majority relies on Depot v. Depot, 893 A.2d 995 (Me.2006). See Maj. Op. at 186-87, 187-89, 194-95, 141 A.3d at 1135, 1136-37, 1140. In Depot, 893 A.2d at 997 n. 1, the evidence before the trial court included “an accountant’s present value estimate of both parties’ anticipated Social Security benefits[.]” In Depot, id., an issue as to equitable distribution arose not because one spouse was entitled to little or no Social Security benefits; instead, an issue as to equitable distribution arose because one spouse was allegedly entitled to more than twice as much in Social Security benefits as the other spouse. The trial court awarded the second spouse more than half of one of the first spouse’s retirement accounts “to balance the perceived ‘present value’ of all of their existing retirement assets, including Social Security benefits!)]” Id. at 997. The first spouse appealed, “contending that the court erred when it awarded [the second spouse] marital property to offset a portion of an accountant’s estimate of the present value of [the first spouse]’s expected Social Security benefits.” Id. The Supreme Judicial Court of Maine agreed, vacated the trial court’s judgment, see id., and held “that transferring other assets to balance or offset expected Social Security benefits is not permitted.” Id. at 1000 (citations omitted).
In another example, the Majority relies on In re Marriage of Boyer, 538 N.W.2d 293 (Iowa 1995). See Maj. Op. at 188- *203 90, 141 A.3d at 1136-37. In Boyer, 538 N.W.2d at 294, one party “presented evidence” of the “present value” of each party’s accumulated Social Security benefits. As in Depot, there was a disparity between the parties’ Social Security benefits; specifically, in Boyer, 538 N.W.2d at 294, one spouse was entitled to more than three times as much in Social Security benefits as the other spouse. The trial court awarded the second spouse multiple assets “ ‘to equalize the property distribution, and also recognizing and taking into consideration the greater benefit [that the first spouse] w[ould] be getting from [S]ocial [SJecurity.’ ” Id. The Supreme Court of Iowa concluded “that [S]tate courts are without power to directly or (by way of setoff) indirectly divide [Sjocial [Security benefits in their formulation of economic terms and dissolution decrees.” Id. at 295. The Court further determined, however, that a disparity between spouses’ Social Security benefits could “be weighed as a factor in fixing the economic terms of a dissolution decree.” Id. at 294.
The Majority also relies on Neville v. Neville, 99 Ohio St.3d 275, 791 N.E.2d 434, 437 (2003). See Maj. Op. at 190-91, 141 A.3d at 1137-38. In Neville, 791 N.E.2d at 435, a magistrate considered “the parties’ anticipated Social Security benefits[.]” As in Depot and Boyer, one spouse was entitled to much more in Social Security benefits than the other spouse; specifically, in Neville, 791 N.E.2d at 435 n. 1, one spouse was entitled to nearly twice as much in Social Security benefits as the other spouse. “The magistrate recommended that [the second spouse] be awarded the equity in the marital residence, explicitly balancing its value against [the first spouse]’s Social Security benefits.” Id. at 435. A trial court adopted the magistrate’s recommendation; an intermediate appellate court reversed the trial court’s judgment; and the Supreme Court of Ohio reversed the intermediate appellate court’s judgment, concluding that “a trial court, in seeking to make an equitable distribution of marital property, may consider the parties’ future Social Security benefits in relation to all marital assets.” Id. at 435-36.
*204 The Majority relies on only one case where, as here, one party was entitled to Social Security benefits, while the other party participated in the CSRS. Specifically, the Majority quotes the following holding from Johnson v. Johnson, 734 N.W.2d 801, 809 (S.D.2007): “[A] court may premise an unequal distribution of marital property on the fact that one party is likely to receive or, in this case, is receiving social security benefits.” See Maj. Op. at 190, 141 A.3d at 1137. In Johnson, 734 N.W.2d at 804, one party was “currently receiving Sjocial [Sjecurity benefits[,j” while the other was a federal employee who participated in the CSRS. In Johnson, id. at 805, one party raised an issue that was similar to the issue that Petitioner raised in this case: “Whether the trial court abused its discretion when it did not offset [one partyj’s [Sjocial [Sjecurity benefits against [the other party’s] CSRS benefits.” As the Majority does here, the South Dakota court exceeded this issue by broadly holding — without any reference to the CSRS in that holding — that “[Sjocial [Sjecurity benefits may be considered as a factor, among others, when dividing marital property.” Id. at 808. Because that, in Johnson, the Supreme Court of South Dakota went beyond that case’s facts, does not mean that this Court must follow in kind.
Equally important, as the majority opinion acknowledges, Social Security benefits do not constitute “property.” See Maj. Op. at 178, 141 A.3d at 1130 (“Social Security benefits are not considered property, but instead are considered non-contractual benefits.” (Citing Flemming v. Nestor, 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960))); Flemming, 363 U.S. at 608, 80 S.Ct. 1367 (A person’s “right to Social Security benefits cannot properly be considered to have been” “an ‘accrued property right.’ ” (Citation omitted)). Indeed, the Social Security Act expressly states that Social Security benefits are non-transferable and non-assignable:
The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, *205 levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
42 U.S.C. § 407(a). In other words, in stark contrast to property, Social Security benefits cannot be bought, sold, or subject to encumbrances.
Indeed, the Supreme Court has described the Social Security system “as a form of social insurance, enacted pursuant to Congresses] power to spend money in aid of the general welfare, whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents.” Flemming, 363 U.S. at 609, 80 S.Ct. 1367 (citation and internal quotation marks omitted). Social Security benefits are based on an employee’s “contributions [ ] made to the national economy while actively employed, [and] are not dependent on the degree to which [the employee] was called upon the support the system by taxation.” Id. Unlike most private pension plans, Social Security benefits are not contractual. Hisquierdo v. Hisquierdo, 439 U.S. 572, 575, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). And, Social Security benefits are not accrued property rights; indeed, Congress has retained “a clause expressly reserving to it the right to alter, amend, or repeal any provision of the [Social Security] Act.” Flemming, 363 U.S. at 610-11, 80 S.Ct. 1367 (citations, internal quotation marks, and parentheses omitted).
In Hisquierdo, 439 U.S. at 573, 585, 99 S.Ct. 802 the Supreme Court addressed a trial court’s award to a wife of an interest in the husband’s expectation of receiving benefits under the Railroad Retirement Act of 1974, and held that the Railroad Retirement Act prohibited such an allocation and division of benefits. In so holding, the Supreme Court observed that the Railroad Retirement Act was similar, in many aspects, to the Social Security Act; for example, “[l]ike Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time.” Id. at 575, 99 S.Ct. 802 (footnote omitted). The Railroad Retirement Act also contained a provision similar to 42 U.S.C. § 407 that stated: *206 “Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated!.]” Hisquierdo, 439 U.S. at 576, 99 S.Ct. 802 (quoting 45 U.S.C. § 231m). And, like the Social Security Act, Congress made an exception to the Railroad Retirement Act to permit collection and enforcement of child support and alimony obligations. Id. The Supreme Court explained that the Railroad Retirement Act, specifically 45 U.S.C. § 231m, protected Congress’s choice to target the benefits created by the Railroad Retirement Act to the employee and not a divorced spouse:
Congress has made a choice, and [45 U.S.C.] § 231m protects it. It is for Congress to decide how these finite funds are to be allocated. The statutory balance is delicate. Congress has fixed an amount thought appropriate to support an employee’s old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective. By reducing benefits received, it discourages the divorced employee from retiring. And it provides the employee with an incentive to keep working, because the former spouse has no community property claim to salary earned after the marital community is dissolved. Section 231m shields the distribution of benefits from state decisions that would actually reverse the flow of incentives Congress originally intended.
Hisquierdo, 439 U.S. at 585, 99 S.Ct. 802. The Supreme Court stated that it could not “lightly discard the settled view that anti-assignment statutes have substantive meaning[,]” and that 45 U.S.C. 231m went “far beyond garnishment” and made “no exception for a spouse.” Id. at 586, 99 S.Ct. 802.
In the wake of Hisquierdo, although Hisquierdo involved the division of benefits under the Railroad Retirement Act, courts have held that the Social Security Act’s prohibition against transfer and assignment, as codified at 42 U.S.C. § 407, prohibits the division of Social Security benefits in a *207 divorce proceeding. See, e.g., Boyer, 538 N.W.2d at 295 (“It is apparent that Hisquierdo bars state courts from adjusting the parties’ disproportionate [SJocial [SJecurity benefit expectations when formulating economic terms of dissolution decrees. The preemptive language of the railroad act ... involved in Hisquierdo is sufficiently similar to that in the [SJocial [SJecu-rity [AJct involved here to render the Hisquierdo holding binding here_ So we agree ... that [SJtate courts are without power to directly or (by way of setoff) indirectly divide [SJocial [SJecurity benefits in their formulation of economic terms and dissolution decrees.”); Olson v. Olson, 445 N.W.2d 1, 11 (N.D.1989) (“To summarize: Before Hisquierdo, [ ] a few decisions permitted limited use of [SJocial [SJecurity benefits in marital property division. Following Hisquierdo ..., [SJtate courts uniformly deny allocation of [SJocial [SJecurity as marital property. Although marital property is generally under [SJtate control, it is clear to us that Congress wants [SJocial [SJecurity to be exclusively federally controlled.... We conclude that [SJocial [SJecurity cannot be distributed or used as an offset in division of marital property. To do so would conflict with the federal plan and would violate the Supremacy Clause of the United States Constitution. Any change in the allocation of [SJocial [SJecurity at divorce must come from Congress.” (Footnote and paragraph breaks omitted)).
It also bears noting that it is well-publicized that the stability of the Social Security trust fund is in question. See, e.g., Jonnelle Marte, “Social Security trust fund will be empty in less than 20 years,” Washington Post, June 22, 2016, available at https://www.washingtonpost.com/news/get-there/ wp/2016/06/22/social-security-and-medicare-still-face-shortfalls-trustees-say/ [https://perma.cc/48L9-BWUW] (“[TJhe Social Security trust fund has enough cash to pay full benefits for another 18 years[.J”). These potential circumstances make it even more difficult for a trial court to estimate the amount of Social Security benefits that a party will receive in the future.
Courts in other jurisdictions have been confronted with the circumstance of one party’s having paid into the CSRS — which *208 exempted the spouse from Social Security — and have not concluded globally, as the Majority does, that present and future Social Security benefits are a factor to be considered in determining a martial property award. In Cornbleth v. Cornbleth, 397 Pa.Super. 421, 580 A.2d 369, 373 (1990), appeal denied, 526 Pa. 648, 585 A.2d 468 (1991), the Superior Court of Pennsylvania held that, in equitably distributing property in a divorce, the trial court should have considered exempt from distribution a portion of a CSRS pension equal to a Social Security benefit; ie., the trial court should have considered an offset of a spouse’s non-marital property Social Security benefits contained within that spouse’s CSRS pension. In Com-bleth, id. at 371, the husband was participating in a CSRS pension plan and did not participate in Social Security; and, “any eligibility for Social Security would result in a commensurate decrease in his pension annuity under the” Civil Service Retirement Act. Both the husband and wife had sizable pensions, and the wife also paid into Social Security. Id. at 372. On appeal, the husband argued that, although under federal law Social Security benefits are not marital property, “all or at least a portion of his CSRS pension should be similarly treated” due to his nonparticipation in Social Security. Id. at 371. The Superior Court of Pennsylvania agreed with the husband, explaining:
To the extent individuals with Social Security benefits enjoy an exemption of that “asset” from equitable distribution we believe those individuals participating in the CSRS must, likewise, be so positioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution. In contrast, an individual who was a civil service participant for many years will, if the trial court’s approach is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting *209 to cushion this financial pitfall. The situation is exacerbated, thus providing a second “blow”, in that the money that would, in a conventional setting, be routed into Social Security, and thus into an exempt status, would either have been consumed by the couple, thus providing previous benefits enjoyed by both, or, perhaps, routed into the CSRS or another retirement type vehicle, which, of course, would then be included in the marital estate.
In either scenario, a substantial stream of income which would be used to finance a future Social Security benefit, which for most individuals is excluded from equitable distribution, is not similarly shielded for the CSRS participant. Thus, the CSRS participant is at a disadvantage when compared to the majority of the work force. Consequently, should equity prevail, this difference must be negated if we are to equate the CSRS participant with Social Security, participants.
Id. at 371-72 (footnote omitted). As to how to calculate the offset, the Superior Court of Pennsylvania stated:
To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes.
Id. at 372.
In Harshbarger v. Harshbarger, 158 Ohio App.3d 121, 814 N.E.2d 105, 109-10 (2004), the Court of Appeals of Ohio stated:
Consider a situation in which one spouse has accrued retirement benefits during the marriage under a pension plan that exempts that spouse from Social Security, and the other spouse, for whatever reason, has no retirement bene *210 fits, either under a pension plan or under Social Security. Barring unusual circumstances, an equitable division of the retirement benefits accrued during the marriage would be an equal division of those benefits.... It would not seem to be equitable, and we are aware of no cases finding it to be equitable, to offset against the retirement benefits accrued during the marriage by the only spouse who has accrued retirement benefits of any kind an amount [that is] equal to the hypothetical Social Security benefits that that spouse would have accrued had that spouse been under Social Security. For example, [suppose that a] husband has accrued during the marriage retirement benefits that will pay $5,000 a month, but would have accrued Social Security benefits paying $2,000 a month had he been under Social Security. Because all of the retirement benefits — $5,000 per month — were accrued during the marriage, it is obviously equitable to divide those benefits equally, so that each spouse receives $2,500 per month. But if the husband’s hypothesized Social Security benefits in the amount of $2,000 per month are first deducted from his pension, leaving $3,000 to be divided, his wife will receive $1,500 per month, and he will receive $3,500 per month, which is not an equal division, and therefore an inequitable division, barring unusual circumstances.
Using the non-Social Security spouse’s hypothetical Social Security benefit instead of the Social Security spouse’s actual Social Security benefit approaches this obviously inequitable resultf,] as the Social Security spouse’s actual Social Security benefit approaches zero.
Where the non-Social Security spouse’s retirement benefits [that were] accrued during the marriage exceed the Social Security spouse’s Social Security benefits [that were] accrued during the marriage, using the Social Security spouse’s actual [S]ocial [S]ecurity benefits as an offset will always result in the equivalent of an equal division of the retirement benefits [that were] accrued during the marriage[,] and is therefore the more equitable method of division, barring unusual circumstances justifying an unequal division.
*211 In Harshbarger, id. at 107, one spouse was entitled to Social Security benefits, while the other spouse was a federal employee who participated in the CSRS; as far as the opinion reveals, the latter spouse was not entitled to any Social Security benefits. One spouse filed for divorce, see id. at 107, and a trial court concluded that “ ‘equity dictates that[,] since a portion of [the non-Social Security spousej’s pension is in lieu of Social Security benefits, that portion should be shielded from an equitable distribution[,]’ ” id. at 108 (brackets omitted). The Social Security spouse appealed and contended that “ ‘[t]he trial court abused its discretion in its determination of the [Sjocial [SJecurity [offset] of [the Social Security spousej’s [Sjocial [SJecurity retirement against [the non-Social Security spousej’s civil service retirement.’ ” Id. The Court of Appeals of Ohio agreed and “conclude[d] that it is an abuse of discretion to apply the hypothetical Social Security offset instead of offsetting the actual amount of the Social Security spouse’s Social Security benefits [that were] accrued during the marriage against the retirement benefits of the non-Social Security spouse [that were] accrued during the marriage.” Id. at 110.
In sum, it is undisputed that Social Security benefits are non-marital property and that the Social Security Act expressly prohibits the division of Social Security benefits in a divorce proceeding. However, whether an offset, or even consideration, of Social Security benefits as a factor can be taken into account by a trial court in dividing marital property is an issue of first impression in Maryland; and, the Supreme Court has not spoken on the subject. As discussed above, courts in other jurisdictions are split on the matter and follow one of three approaches: (1) an offset of Social Security benefits is prohibited by 42 U.S.C. § 407 and Social Security benefits are not to be considered in the division of marital property (this is the approach advocated by Respondent in this case); (2) an indirect offset of Social Security benefits — either by: (a) offsetting the actual amount of one spouse’s Social Security benefits accrued during the marriage against the retirement *212 benefits of the CSRS pension spouse accrued during the marriage, or (b) determining the present value of the CSRS pension spouse’s Social Security benefits had he or she participated in Social Security during the marriage (this latter approach is the approach advocated by Petitioner in this case) — is permissible; or (3) an offset of Social Security benefits is not allowed but a trial court may consider one spouse’s Social Security benefits in the division of marital property.
I would affirm the judgment of the Circuit Court for Howard County and hold that Social Security benefits are not to be offset against the marital portion of a CSRS pension in a divorce action or to be considered a factor under F.L. § 8-205(b) in determining a monetary award in a divorce action. To the extent that in a footnote in Pleasant v. Pleasant, 97 Md.App. 711, 720 n. 3, 632 A.2d 202, 207 n. 3 (1993), the Court of Special Appeals suggested that a trial court may consider Social Security benefits as a factor under F.L. § 8-205(b)(11), I would not adopt this rationale. As discussed above, Social Security benefits are not property, let alone marital property; the value of future Social Security benefits is speculative at best; and the payment of Social Security benefits is not guaranteed.
The Majority makes Social Security benefits a new factor that is to be considered under F.L. § 8-205(b)(11) in routine divorce actions that involve the equitable distribution of marital property, regardless of the parties’ circumstances with respect to having paid into Social Security. This holding greatly exceeds the question presented, ignores that Social Security benefits are not property, conflicts with F.L. § 8-205(b)(3)’s requirement that a monetary award be based on a party’s current economic circumstances, and will force trial courts to speculate about the amount of future Social Security benefits.
For the above reasons, respectfully, I dissent.
Judge HOTTEN has authorized me to state that she joins in this opinion.